[Nos. 48344–2, 48347–7.   En Banc.   April 21, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. DALE
ROBERT CHERVENELL, *Petitioner.*

THE STATE OF WASHINGTON, *Respondent,* v. REGINALD
JOHN CRIGLER, *Appellant.*

*John G. Ziegler,* for petitioner.

*David R. Wohl* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Chris Quinn–Brintnall* and *Deborah J. Phillips, Deputies,* for respondent.

UTTER, J.—These two consolidated cases are appeals from judgments of habitual offender status. In both proceedings, at least one of the convictions relied upon to establish habitual criminal status was based upon a guilty plea. In neither proceeding, however, did the State prove that the defendant, before pleading guilty, had been aware of his Fifth Amendment right not to testify against himself at trial. The issue thus presented is whether the State,

when relying upon a conviction based upon a guilty plea to establish habitual criminal status, must show that the defendant was aware of this right. We hold that it must and therefore reverse the adjudications of habitual criminal status appealed herein.

In 1978, Dale Chervenell was found guilty of armed robbery. A supplemental information was subsequently filed alleging two prior felonies, one of which was a conviction for possession of over 40 grams of marijuana. That conviction was based on a guilty plea, the validity of which Chervenell challenged at his habitual offender proceeding. The State did produce evidence at that proceeding showing that at the time of his marijuana conviction Chervenell had been advised by the court of his right to a jury trial, his right to confront his accuser, and various other rights; however, it did not show that he had been advised of his right not to testify against himself. Perhaps aware of this omission, the State did offer to call Chervenell's former attorney to prove Chervenell's awareness of his right not to testify but the court rejected such testimony as unnecessary.

Reginald Crigler was convicted of burglary on April 20, 1981, and adjudicated a habitual offender on July 7. The latter adjudication was premised on two prior robbery convictions, one of which was based on a guilty plea. The only evidence offered by the State to prove the validity of that plea was the guilty plea form signed by Crigler and the record of proceedings at the time he pleaded guilty. Though these documents did show that Crigler had been informed of his right to a jury trial and right to confront his accuser, neither showed that Crigler was aware of his right not to testify against himself. Moreover, Crigler took the stand and affirmatively testified that he was not aware of this right.

The failure to show that Chervenell and Crigler were aware of their rights not to testify against themselves at trial renders their past guilty pleas constitutionally invalid. Convictions based upon those pleas can therefore not be used to support an adjudication of habitual offender status.

## I

■■ A conviction based upon a guilty plea which is not knowing and voluntary is constitutionally invalid. *Boykin v. Alabama,* 395 U.S. 238, 242–43, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969). Moreover, reliance upon such an invalid conviction in a habitual offender proceeding violates anew the defendant's constitutional rights by renewing the original violation. *State v. Holsworth,* 93 Wn.2d 148, 157, 607 P.2d 845 (1980). Once the defendant raises the issue of a past conviction's constitutional validity, therefore, the State must prove its validity beyond a reasonable doubt. *Holsworth,* at 159.

The seminal case enumerating the conditions which must be satisfied before a court can constitutionally accept a defendant's guilty plea is *Boykin v. Alabama, supra.* In general, the court must assure that the defendant "has a full understanding of what the plea connotes and of its consequence." *Boykin,* at 244. One consequence, in particular, of which the defendant must be aware is the resulting waiver of his or her most basic constitutional rights. One of those rights is the privilege against self–incrimination.

> Several federal constitutional rights are involved in a waiver that takes place when a plea of guilty is entered in a state criminal trial. First, is the *privilege against compulsory self–incrimination* guaranteed by the Fifth Amendment and applicable to the States by reason of the Fourteenth. Second, is the right to trial by jury. Third, is the right to confront one's accusers. *We cannot presume a waiver of these three important federal rights from a silent record.*

(Citations omitted. Italics ours.) *Boykin,* at 243. Only by assuring that a defendant is aware of the rights he will have at trial can we make his decision to forego his right to trial "knowing". *See In re Keene,* 95 Wn.2d 203, 214–15, 622 P.2d 360 (1980) (Utter, C.J., concurring and dissenting).

Thus a defendant who pleads guilty must be aware of his right not to testify against himself at trial. This does not necessarily require express advisement (*see, e.g., Fontaine v. United States,* 526 F.2d 514, 516 (6th Cir. 1975), *cert.*

*denied,* 424 U.S. 973 (1976), and cases cited therein); however, *Boykin does* require that there be *some* evidence in the record which shows that the defendant knew of his right to remain silent (*see, e.g., United States v. Webb,* 433 F.2d 400, 403 (1st Cir. 1970), *cert. denied,* 401 U.S. 958 (1971) (court inferred waiver of privilege against self-incrimination from discussion of guilty plea with counsel)).[1] Moreover, *Boykin* strongly suggested, though it did not require, that the court should assure sufficient evidence by expressly advising defendants of the rights they waive by pleading guilty. Pursuant to this suggestion, various standards of criminal procedure which have been promulgated since *Boykin* require such express advice. *See* H.R. Rep. No. 247, 94th Cong., 1st Sess. 7, *reprinted in* 1975 U.S. Code Cong. & Ad. News 674, 679 (1974 amendments adding warnings which court must give to a defendant under Fed. R. Crim. P. 11(c) before accepting his guilty plea were "to include those that *Boykin* v. *Alabama,* 395 U.S. 238 (1969), said were constitutionally required"); 3 American Bar Ass'n, *Standards for Criminal Justice,* Std. 14–1.4, at 14.21–22 (2d ed. 1980); *ABA Standards Relating to the Function of the Trial Judge,* Std. 4.2(a)(ii) (Approved Draft, 1972).

Our interpretation of *Boykin* today is in accord with the view we have taken in our previous cases. *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976) was the first case in

---

[1]The need for and presence of such evidence in the federal cases which have applied *Boykin* has not always been clear, since their focus has generally been upon the need for express advisement by the court. In any event, a federal court of appeals cannot overrule the Supreme Court and *Boykin* quite clearly requires such evidence. It should also be recalled that the burden of proof in a collateral attack on a guilty plea differs from that in a habitual offender proceeding. *Compare In re Hagler,* 97 Wn.2d 818, 825–26, 650 P.2d 1103 (1982) (burden on petitioner in personal restraint proceeding to show error more likely than not) and cases cited therein *with State v. Holsworth, supra* at 159–60 (State must prove validity of conviction beyond a reasonable doubt). (By our citation of *Hagler* in this context, we do not intend to suggest that *Boykin* requires that the defendant show that awareness of his rights would have changed his plea—such a requirement was rejected in *Henderson v. Morgan,* 426 U.S. 637, 644 n.12, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976).)

which we dealt with the application of *Boykin* in this state. In *Wood* we recognized that *Boykin* permitted proof of its requirements by extrinsic evidence. *Wood,* at 506–08. We held, however, that our CrR 4.2 went further and required that the record show on its face that the defendant "understands the nature of the charge and the full consequences of a guilty plea". *Wood,* at 511. With respect to the specific rights understanding of which *Boykin* requires, we said nothing.

*State v. Holsworth, supra,* simply applied *Boykin,* which had dealt with attempts to overturn convictions based on guilty pleas, to the use of such convictions in a habitual criminal proceeding. We held:

> The defendant in a habitual criminal proceeding may challenge the use of pre–*Boykin* pleas. The State has the burden of proving beyond a reasonable doubt that the plea was knowingly made after the defendant was apprised of the nature of the offense and of the consequences of pleading guilty to it, including possible maximum and mandatory minimum sentences upon conviction and the constitutional rights to jury trial, to confrontation, *and to remain silent,* waived by the plea.

(Italics ours.) *Holsworth,* at 161. While this language might be construed as requiring a trial court to expressly advise a defendant of the three enumerated constitutional rights in addition to the nature of the offense and consequences of his plea, we do not so read it. It simply applies the requirements of *Boykin* to the use of past convictions in a habitual criminal proceeding. Hence, the State must show, by extrinsic evidence if need be, that the defendant understood the nature of the offense charged and the consequences of his plea and was aware of his rights to a jury trial, to remain silent, and to confront his accusers.

The State seems to claim that the Fifth Amendment privilege of which *Boykin* requires awareness is not the right of a defendant not to testify against himself at trial but is instead some vague right to be free from a coerced guilty plea. This assertion is not well taken. Nothing in *Boykin* supports it. The Supreme Court's enumeration of

the right in conjunction with the other trial rights of jury trial and confrontation leaves no doubt that the Court had in mind the right not to testify *at trial*. As noted above, the whole purpose of advising a defendant of these rights is to allow him to evaluate the State's case. *See In re Keene*, 95 Wn.2d 203, 213–15, 622 P.2d 360 (1980) (Utter, C.J., concurring and dissenting). An awareness of his right not to testify against himself at trial is crucial to such an evaluation.

## II

While the faithful application of *Holsworth* may reduce the number of convictions upon which the State may rely in habitual offender proceedings, its requirements are based upon constitutional mandates which we must obey. We cannot now retreat from our holding in *Holsworth* and allow a renewed emasculation of defendants' constitutional rights simply because it may increase convictions of alleged habitual offenders. The federal and state constitutions, as embodied in our criminal justice system, have concerns much broader than the laudable but narrow one of incarcerating repeat offenders. Moreover, this court has no power, in the face of express language to the contrary, to construe *Boykin* as the State suggests.

Even were we to consider the difficulty of proving the validity of past guilty pleas to be relevant here, such proof is far from impossible. A defendant's awareness of his right to remain silent might be shown in a number of ways. The most preferable approach, and one which we strongly urge trial courts to take in the future, would be to explicitly advise the defendant of his right at the time of his plea. *See Boykin v. Alabama, supra* at 244. Yet other evidence is also available. For example, a defendant's knowledge of his right to remain silent might be shown by proof that he had read a guilty plea form which described that right. *See In re Keene, supra* at 206–07. A defendant's prior trial experience, especially prior exercise of his right not to testify against himself, would also be highly probative.

Finally, the defendant's prior attorney might provide a source of evidence of the defendant's awareness of his right to remain silent. If nothing else, the previous attorney might testify as to his habits—precisely such testimony was offered in the case of petitioner Chervenell. Alternatively, the defendant's previous attorney might be called to testify as to whether she advised the defendant of his right to remain silent. *See North Carolina v. Alford,* 400 U.S. 25, 29 n.3, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970).

■ The attorney–client privilege does not prevent such testimony. While that privilege does extend to attorney advice as well as client communications (RCW 5.60.060(2)), it is not absolute and "must be strictly limited to the purpose for which it exists". *Dike v. Dike,* 75 Wn.2d 1, 11, 448 P.2d 490 (1968). Its central purpose is to encourage free and open attorney–client communication by assuring the client that his communications will be neither directly nor indirectly disclosed to others. *State ex rel. Sowers v. Olwell,* 64 Wn.2d 828, 832, 394 P.2d 681, 16 A.L.R.3d 1021 (1964); E. Cleary, *McCormick on Evidence* § 87 (2d ed. 1972); Orland & Tegland, *The Federal Rules of Evidence: Washington Follows the Federal Model,* 15 Gonz. L. Rev. 277, 326 (1980). In general, disclosure of the mere fact that an attorney has advised a client of the latter's privilege against self–incrimination will not indirectly disclose client communications.[2] The privilege thus does not bar disclo-

---

[2]Some commentators have noted that special solicitude for the privacy of the attorney–client relationship and the honor of the legal profession are important additional bases for the privilege. *See, e.g.,* Saltzburg, *Privileges and Professionals: Lawyers and Psychiatrists,* 66 Va. L. Rev. 597, 604, 609 (1980); Louisell, *Confidentiality, Conformity and Confusion: Privileges in Federal Court Today,* 31 Tul. L. Rev. 101, 109–15 (1956); *but see* E. Cleary, at § 57 (arguing that the former basis for the privilege, loyalty to the client, has been replaced by a concern for encouraging attorney–client communication). We agree that these considerations are important, though not paramount. The question of the privilege's applicability requires a balancing of the interests in the attorney–client relationship and its interest in the administration of justice, however. *Dike v. Dike, supra* at 14; *State ex rel. Sowers v. Olwell, supra* at 832. Since allowing assertion of the privilege in the present context might well prevent the use in habitual offender proceedings of most past convictions based on guilty pleas, the balance weighs

sure of such advice.[3] Further probes into the reason for the advice and the circumstances in which it was given will be unnecessary and should not be permitted, as such probes are much more likely to indirectly disclose client communications.

## III

The courts below erred in not requiring the State to show appellant and petitioner were aware of their privileges against self–incrimination. There is no evidence at all in the record that Crigler was aware of his right to remain silent. Neither is there any evidence in the record of the proceeding against Chervenell that he was aware of this right. While the State did offer evidence which might have been sufficient, in the form of testimony by Chervenell's former attorney that he invariably informed clients of their rights, the trial court did not hear this evidence.

In any event, the evidence produced in Chervenell's habitual offender proceeding was insufficient in another respect as well. The State did not produce sufficient evidence to show that Chervenell was aware of the nature of the charge against him when he pleaded guilty to the marijuana charge.

■ Probably the most important requirement of *Boykin* is that the defendant receive "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process". *Smith v. O'Grady,*

against it here. With respect to guilty pleas taken after this opinion, we might weigh the competing considerations differently.

[3]While we approve of the result, we disapprove of the analysis in *State v. Pam,* 31 Wn. App. 692, 644 P.2d 722 (1982). In that case, the defendant in a habitual offender proceeding sought to claim the attorney–client privilege when the State called his former attorney to testify about advising the defendant of his constitutional rights. *Pam,* at 693. The Court of Appeals, apparently assuming that the privilege was applicable, held that the defendant had waived it by challenging the validity of his prior conviction under *Holsworth. Pam,* at 695. This analysis leads us too near the edge of a slippery slope. Carried to its logical extreme, it might require the conclusion that a defendant waives the privilege with respect to any element of an offense which he contests.

312 U.S. 329, 334, 85 L. Ed. 859, 61 S. Ct. 572 (1941), *quoted in Henderson v. Morgan,* 426 U.S. 637, 645, 49 L. Ed. 2d 108, 96 S. Ct. 2253 (1976); *State v. Holsworth,* 93 Wn.2d 148, 156, 607 P.2d 845 (1980). In particular, this requires that the defendant be aware of the basic elements of the offense charged. *See Henderson v. Morgan, supra* at 646–47; *In re Keene, supra* at 208–09; *State v. Holsworth, supra* at 153 n.3. Since the amount of marijuana possessed is the only factor which distinguishes felony possession of marijuana from misdemeanor possession (*see* RCW 69.50-.401(e)), it is a critical element of the former offense.

Yet there was no evidence that Chervenell was aware that the amount of marijuana in his possession was one of the facts which the State would be required to prove at trial. The information which charged him alleged only that he had been in possession of marijuana, saying nothing of the amount possessed. Neither did the plea form signed by Chervenell make any reference to amount. Finally, there is no evidence in the record that either the court or Chervenell's attorney advised him that the prosecution was required to prove the amount in his possession. Indeed, the *only* mention of amount during the proceedings was a statement by the prosecutor *after* Chervenell entered his plea that the amount possessed had exceeded 40 grams.

For two reasons, this statement by the prosecutor is insufficient to show that Chervenell was aware that amount was an element of the offense. First, since the statement was made after Chervenell entered his plea, it is not probative of his awareness prior to pleading guilty. Yet it is such prior knowledge which *Boykin* and *Holsworth* require. *See Holsworth,* at 161 (plea must be made "*after* the defendant was apprised of the nature of the offense" (italics ours)).

Even had the prosecutor's statement been timely, it would be insufficient to establish that Chervenell was fully aware of the nature of the offense charged. The prosecutor did not describe the amount possessed as an element of the offense, but merely stated it as one of the facts surrounding the offense. A plea is constitutionally valid, however, only if

the defendant understands the "law *in relation to the facts.*" (Italics ours.) *McCarthy v. United States,* 394 U.S. 459, 466, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). Even if Chervenell was made aware of the factual assumptions on which the court and the State were proceeding, there is no evidence that he was made aware of the relation between them and the law. Neither the prosecutor, the court, nor Chervenell's attorney made any attempt to explain to him the relevance of the prosecutor's specification of amount.

The State did not produce sufficient evidence to prove beyond a reasonable doubt the validity of Chervenell's marijuana conviction. The adjudication of Chervenell as a habitual offender is therefore reversed. As noted above, the State also failed to prove the constitutional validity of Crigler's conviction and so the verdict against him must also be reversed. Both cases are remanded for further proceedings not inconsistent with this opinion.

WILLIAMS, C.J., and STAFFORD, DOLLIVER, and PEARSON, JJ., concur.

ROSELLINI, J. (dissenting)—The majority states the issue in this case as "whether the State, when relying upon a conviction based upon a guilty plea to establish habitual criminal status, must show that the defendant was aware of this right [to remain silent]." Majority opinion, at 310–11. The majority's holding, however, goes much further to require that the State prove that the defendant was expressly informed of each right. Neither *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969) nor our decision in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976) mandates this result. For this and other reasons set forth below, I dissent.

In *Boykin,* the United States Supreme Court set out the standard for reviewing guilty pleas. The Court indicated that the record must show, or there must be evidence to show, that the waiver involved in a plea of guilty was made voluntarily and with awareness of the rights relinquished.

The Court said that "[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats might be a perfect cover–up of unconstitutionality." *Boykin,* at 242–43. The Court summarized the constitutional rights waived by pleading guilty and concluded the utmost solicitude of which courts are capable is demanded, to make sure that the accused has a full understanding of what the plea connotes and of its consequence.

*Boykin* represents the Court's concern that the record of a guilty plea be adequate to insulate the judgment from attack.[4] The majority converts this concern for demonstrating the voluntariness of a plea into a specific procedural requirement that the defendant be informed of each and every constitutional right. This is not the law.

In construing *Boykin* and *McCarthy v. United States,* 394 U.S. 459, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969), the federal circuit courts have concluded that it was not the intent of the United States Supreme Court to invalidate guilty pleas simply because a trial judge failed to alert a defendant to all of the constitutional rights he was waiving, so long as the record otherwise showed that the plea was knowingly and voluntarily entered. *United States v. Sherman,* 474 F.2d 303 (9th Cir. 1973); *United States v. Webb,* 433 F.2d 400 (1st Cir. 1970), *cert. denied,* 401 U.S. 958 (1971); *Wade v. Coiner,* 468 F.2d 1059 (4th Cir. 1972) (a catechism of constitutional rights is not required); *McChesney v. Henderson,* 482 F.2d 1101 (5th Cir. 1973), *cert. denied,* 414 U.S. 1146 (1974); *Hansen v. Mathews,* 424 F.2d 1205 (7th Cir.), *cert. denied,* 397 U.S. 1057 (1970);

---

[4]In commenting on the need for an appropriate record, the Court cited *Commonwealth ex rel. West v. Rundle,* 428 Pa. 102, 105–06, 237 A.2d 196, 197–98 (1968). That court noted:

A majority of criminal convictions are obtained after a plea of guilty. If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences.

(Footnotes omitted.)

*United States v. Vallejo,* 476 F.2d 667 (3d Cir. 1973); *United States v. Cantor,* 469 F.2d 435 (3d Cir. 1972); *United States v. Frontero,* 452 F.2d 406 (5th Cir. 1971); *Summers v. United States,* 538 F.2d 1208 (5th Cir. 1976); *Fontaine v. United States,* 526 F.2d 514 (6th Cir. 1975), *cert. denied,* 424 U.S. 973 (1976); *Wilkins v. Erickson,* 505 F.2d 761 (9th Cir. 1974). *Contra, French v. Henderson,* 317 F. Supp. 25 (W.D. La. 1970).

State courts have generally taken the same approach. *State v. Zaye,* 108 Ariz. 13, 492 P.2d 392 (1972); *State v. Jackson,* 16 Ariz. App. 388, 493 P.2d 934 (1972); *State v. Bell,* 210 N.W.2d 423 (Iowa 1973); *People v. Minson,* 24 Mich. App. 692, 180 N.W.2d 805 (1970); *People v. Mendoza,* 48 Ill. 2d 371, 270 N.E.2d 30 (1971).[5] *Cf. In re Tahl,* 1 Cal. 3d 122, 460 P.2d 449, 81 Cal. Rptr. 577, *cert. denied,* 398 U.S. 911 (1970); *Higby v. Sheriff of Clark Cy.,* 86 Nev. 774, 476 P.2d 959 (1970).

In *United States v. Frontero, supra* at 415, the Fifth Circuit, discussing a contention that the defendant was entitled to specific monition as to the constitutional rights waived by the plea in the context of Fed. R. Crim. P. 11, said:

> This Court is, however, aware of no precedent, from the Supreme Court or elsewhere, for the proposition that due process requires that a defendant be informed of each and every right which is waived by a guilty plea or that the waiver of these rights is a "consequence", within the meaning of Rule 11, of which a defendant must be personally informed before a guilty plea may be accepted.

---

[5] A different result is reached in some circuit cases reviewing district court decisions, rather than state court decisions, which, of course, are decided under Fed. R. Crim. P. 11. *See United States v. Gearin,* 496 F.2d 691 (5th Cir. 1974); *United States v. Escandar,* 465 F.2d 438 (5th Cir. 1972) (dictum). *But compare United States v. Vallejo, supra* at 671, holding that "'. . . once the court has satisfied itself . . . that the guilty plea was made knowingly and voluntarily, an independent warning against self–incrimination becomes unnecessary" (citing *Davis v. United States,* 470 F.2d 1128, 1132 (3d Cir. 1972)).

Fed. R. Crim. P. 11(c)(3) requires the court to inform the defendant of and determine that he understands "the right not to be compelled to incriminate himself".

Reliance upon *Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969) for such a proposition, the court said, was misplaced. *Boykin* involved a silent record, wherein there was absolutely no showing that the guilty plea was intelligently and voluntarily entered.

In *McChesney v. Henderson, supra,* the Fifth Circuit said that no rule of criminal procedure was mandated by *Boykin,* and there is no express requirement that specific articulation of the three constitutional rights mentioned in it be given to the accused at the time of the acceptance of a plea of guilty, but it is necessary that the record show that the guilty plea was intelligently and voluntarily made.

In Washington, the first definitive interpretation of *Boykin v. Alabama, supra* (the Supreme Court decision upon which *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980) was based) was contained in *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

In *Wood,* the petitioner, in a habeas corpus proceeding, sought to nullify the mandatory minimum sentence imposed upon him because he was armed with a firearm at the time he killed his victim, on the ground that he was not adequately informed of that consequence of his guilty plea before he entered it. At the beginning of the opinion, this court stated the rule it was adopting:

> [H]ereafter the record of the plea hearing must affirmatively disclose a guilty plea was made intelligently and voluntarily, with an understanding of the full consequences of such a plea.

*Wood,* at 503.

In elaborating upon this holding, we said that adherence to CrR 4.2 accomplishes that purpose. This rule does not require the trial judge to ask the defendant, at the plea hearing, whether he understands that he has the right to remain silent. It does, however, require the following:

> **(d) Voluntariness.** The court shall not accept a plea of guilty, without first determining that it is made voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea.

. . .
**(g) Written Statement.** A written statement of the defendant . . . shall be filed on a plea of guilty:

. . .
5. The court has told me that:
   (a) I have the right to have counsel (a lawyer), and that if I cannot afford to pay for counsel, one will be provided at no expense to me.
   (b) I have the right to a trial by jury.
   (c) I have the right to hear and question witnesses who testify against me.
   (d) I have the right to have witnesses testify for me. These witnesses can be made to appear at no expense to me.
   (e) The charge must be proven beyond a reasonable doubt.

Under our holding in *Wood,* in cases tried after 1976, the record must affirmatively disclose the defendant's intelligent waiver. This requirement was expressly bottomed on the rule itself and not on the constitution. With respect to constitutional requirements, we held that under *Boykin v. Alabama, supra,* it is sufficient if evidence exists to *in some manner* indicate that an intelligent and voluntary waiver of the rights of jury trial, confrontation of witnesses, and silence was made.

This court held that these rules, both the constitutional rule and the rule based on CrR 4.2, should have only prospective application.

In *State v. Holsworth, supra,* this court held that to apply the *Boykin* doctrine to former convictions relied upon by the State in a habitual criminal proceeding is neither collateral nor retroactive in nature. We concluded that *Wood* was not controlling insofar as it made the *Boykin* rule apply only prospectively.

Citing *Boykin,* we said in *Holsworth* that in order for a conviction on a guilty plea to be valid for evidentiary purposes in a habitual criminal proceeding, the defendant must be advised on the consequences of his plea. We said:

The consequences of which the defendant *must* be advised include not only the sentencing alternatives pos-

sible, [but] . . . [t]he defendant *must* also be apprised of his constitutional rights *to remain silent,* to confront accusers, and to jury trial. He must be made aware that his guilty plea necessarily waives those rights. *Boykin, supra* at 243.

(Italics mine.) *Holsworth,* at 153.

This court also stated, at page 161, that

[t]he State has the burden of proving beyond a reasonable doubt that the plea was knowingly made after the defendant was apprised of the . . . constitutional rights to jury trial, to confrontation, and to remain silent . . .

This language in *Holsworth* does lend itself to the interpretation that the judge must give specific advice as to the privilege against self–incrimination. It does not state, however, that the advice must come from the judge. I do not believe it was our intent to require a ritualistic recitation of the rights which are waived, provided the record reveals that the defendant was aware of those rights.

A rule which requires express advisement celebrates form over substance. The court's focus should be on the issue of whether the plea is made voluntarily, competently, and with an understanding of the nature of the charge and the consequences of the plea. In addition, the judge should determine that there is a factual basis for the plea. CrR 4.2(d). When the court questions the defendant as to whether he has been coerced or induced by improper promises and satisfies itself that the plea is indeed voluntary, it has also satisfied the constitutional requirement. It is then clear that the defendant is not being compelled to testify against himself. This, I believe, is all that the *Boykin* Court had in mind when it said that a defendant who pleads guilty waives the privilege against self–incrimination, and that such waiver must be made knowingly.

It is true that the ABA standards now require more, as does Fed. R. Crim. P. 11. 3 American Bar Ass'n, *Standards for Criminal Justice,* Std. 14–1.4 (2d ed. 1980) provides for the duties of the trial judge with respect to acceptance of pleas. Subparagraph (a)(iv) requires the court to address

the defendant and determine that he understands

> that by pleading guilty the defendant waives the right to a speedy and public trial, including the right to trial by jury; the right to insist at a trial that the prosecution establish guilt beyond a reasonable doubt; the right to testify at a trial and the right not to testify at a trial; the right at a trial to be confronted by the witnesses against the defendant, to present witnesses in the defendant's behalf, and to have compulsory process in securing their attendance;

On the other hand, the standard no longer requires that the court determine whether the defendant understands that he need not plead guilty.

By adopting a per se rule such as that suggested by the majority, the focus has shifted from voluntariness of the plea to a talismanic recital of rights. Such a shift is neither wise nor constitutionally required. Furthermore, it unnecessarily jeopardizes a substantial number of guilty pleas which were freely and voluntarily made but do not fit into the majority's model of an ideal guilty plea.

In the cases before us, it is evident from the record that the defendants understood they could not be compelled to plead guilty and waive a jury trial and that they did so freely and voluntarily with knowledge of their significant rights, as well as the nature of the charge and the consequences of their pleas. The Court of Appeals did not err in refusing to upset the trial court's findings, since there was ample evidence that the pleas were made freely and voluntarily, with full knowledge of the consequences. For instance, the majority admits that Chervenell's attorney was willing to testify that his client was aware of his right to remain silent. Under these circumstances, it is simply unfair to the State to reverse these convictions.

Finally, I must also note my dissent to the majority's analysis concerning Chervenell's knowledge as to the amount of marijuana he possessed. As explained in the well reasoned Court of Appeals opinion, the evidence on this issue was also adequate to support the conclusion that Chervenell's plea was freely made.

I would thus affirm these convictions.

BRACHTENBACH, DORE, and DIMMICK, JJ., concur with ROSELLINI, J.

Reconsideration denied June 22, 1983.