[Nos. 12737–3–I; 12738–1–I.  Division One.  March 12, 1984.]

THE CITY OF BELLEVUE, *Respondent,* v. MAURICE ACREY, *Petitioner.*

THE CITY OF BELLEVUE, *Respondent,* v. CYNTHIA L. BANDLE, *Petitioner.*

*Rigby & Jones* and *Bradley B. Jones,* for petitioners (appointed counsel for appeal).

*Linda M. Youngs, City Attorney,* and *Susan Irwin* and *Scott McKee, Assistants,* for respondent.

SCHOLFIELD, J.—Maurice Acrey and Cynthia Bandle appeal their convictions in Bellevue District Court for obstructing a public officer, a misdemeanor under the Bellevue City Code. On RALJ appeal to superior court, their convictions were affirmed, and we affirm the Superior Court.

On November 21, 1981, the car in which appellants Acrey and Bandle were riding ran into the rear of a car driven by Geoffrey Ross. Acrey and Bandle told a Bellevue city police officer that Bandle had been driving.

Several days later, upon submitting an accident report, Ross told the Bellevue officer that Acrey, not Bandle, had been driving the car. Ross stated that at the accident scene Acrey and Bandle agreed to tell the police Bandle was driving because she had insurance coverage and Acrey did not. The officer then cited Acrey and Bandle for obstructing a public officer, Bellevue City Code 10.16.030.

At the arraignment on January 12, 1982, the district court judge read aloud the rights listed in a "Statement of Rights of Accused Persons" form. These included the right to counsel and the right to jury trial in selected cases. Specifically, the judge advised Acrey and Bandle:

> You have a right to a trial before a judge, or, in selected cases, before a jury. [The court further briefly described when the defendants are entitled to a jury.] You have a right to be represented by a lawyer of your own choosing at your own expense at any stage during the proceedings. If you cannot afford a lawyer, a public defender can be appointed without charge to you to assist you in your defense.

After orally advising them of additional rights, the judge called each defendant separately to the bench and the following occurred:

COURT: Maurice Acrey. Mr. Acrey, do you feel you understand your rights in this court?
ACREY: Yes.
COURT: Any questions you'd like to ask me about?
ACREY: No.

COURT: You're charged with two offenses; first is Obstructing a Police Officer. Do you feel you understand the nature of that charge?

ACREY: I don't know the nature of the charge, of the specifics, I know what the charge means.

COURT: O.K. Are you prepared to enter a plea at this point?

ACREY: Yes, not guilty.

. . .

COURT: Ms. Bandle, do you feel you understand your rights in this Court?

BANDLE: Yes.

COURT: Any questions you'd like to ask me about those rights?

BANDLE: No.

COURT: You're charged with Obstructing a Public Officer also on the 21st of November, 1981. Do you feel you understand what the nature of the charge is?

BANDLE: Yes.

COURT: Are you prepared to enter a plea to that charge?

BANDLE: Yes, not guilty.

COURT: Do you have any questions about any of that?

BANDLE: No.

In addition to being advised of their rights orally, each defendant signed the "Statement of Rights of Accused Persons" form, which contained the following:

As a result of being accused of a criminal or traffic offense, and pleading Not Guilty, you are entitled to the following protective rights:

. . .

2. A trial before a judge, or, in selected cases, before a jury.

. . .

6. The right to be represented by a lawyer of your own choosing and at your own expense at any stage of the proceedings. If you cannot afford a lawyer, a public defender can be appointed, without charge to you, to assist in your defense.

. . .

NOTE CONCERNING PUBLIC DEFENDER: If you believe that you qualify to be represented by the Public Defender due to your being unemployed or without money to hire and

pay for your own lawyer, you should immediately contact:

OFFICE OF PUBLIC DEFENSE
1914 Smith Tower
Seattle, Washington 98104
Phone: 344-3462

NOTE CONCERNING RIGHT TO AND REQUEST FOR JURY TRIAL: You have a right to a jury trial if charged with any offense by the State of Washington, or by a city or municipality with a Gross Misdemeanor or other offense which will result, upon a judgment of guilty, in the suspension or revocation of your driver's license or privilege to drive. A jury trial must be timely requested in writing prior to your trial date.

Following advice of rights and entering their pleas, defendants were assigned a trial date of February 11, 1982, approximately 1 month later.

Acrey and Bandle appeared pro se at trial. The trial judge found them guilty of the charge of obstructing a public officer. At sentencing, Acrey and Bandle were represented by appointed counsel. Each was sentenced to 10 days in jail. They appealed to King County Superior Court, alleging insufficiency of the evidence and unconstitutional vagueness of the Bellevue ordinance against obstructing public officers.

The superior court judge found on RALJ review that the ordinance was constitutional and that there was sufficient evidence to support the convictions.

Acrey and Bandle first contend that the obstructing public officers ordinance is unconstitutionally vague and overbroad.

The Bellevue ordinance, section 10.16.030, provides:

Obstructing public officers.
It is unlawful for any person to make any wilfully untrue, misleading or exaggerated statement, or to wilfully hinder, delay or obstruct any public officer in the discharge of his official powers or duties.

Part of Acrey and Bandle's "overbreadth" argument is their assertion that "peace officer" is separately defined from "public officer." It is true that nowhere in the defini-

tion of "officer" and "public officer" is there an explicit reference to law enforcement officers. Acrey and Bandle allege that there is thus ambiguity as to who is a "public officer."

This is really a question of vagueness rather than overbreadth. In any case, this issue was settled in *Mountlake Terrace v. Stone,* 6 Wn. App. 161, 165, 492 P.2d 226 (1971). There, "public officer" was construed to include a police officer.

█ Acrey and Bandle argue that the ordinance prohibits false statements to anyone. In a strict grammatical sense, the ordinance is arguably ambiguous on this point. If the language of an act is ambiguous, the title may be resorted to as an aid to construction. *Ayers v. Tacoma,* 6 Wn.2d 545, 556–57, 108 P.2d 348 (1940). The title here instructs that only false statements to public officers are prohibited.

Acrey and Bandle rely on *State v. White,* 97 Wn.2d 92, 640 P.2d 1061 (1982) for their contention that the Bellevue ordinance is unconstitutionally vague and overbroad. *White* struck down two sections of RCW 9A.76.020. That statute provided:

> Obstructing a public servant. Every person who, (1) without lawful excuse shall refuse or knowingly fail to make or furnish any statement, report, or information lawfully required of him by a public servant, or (2) in any such statement or report shall make any knowingly untrue statement to a public servant . . . shall be guilty of a misdemeanor.

The court held that the term "public servant" was too broadly defined and encompassed nearly any person employed by the government. *White* involved a stop–and–identify statute, and much of the concern of the court was directed toward the Fourth Amendment's prohibition against unreasonable intrusions into the lives of citizens.

The ordinance involved here, however, does not require anyone, as did the state statute, to make any statement when asked to do so by a "public servant." The Bellevue ordinance only makes it illegal to make a "wilfully untrue, misleading or exaggerated statement" to a public officer.

The vagueness questions in *White* were primarily directed at sections of the law that have no counterpart in the Bellevue ordinance.

While they do not articulate the issue clearly, Acrey and Bandle seem to be alleging that the ordinance is vague on its face. A statute or ordinance must define proscribed conduct clearly enough that persons of reasonable understanding are not required to guess at its meaning. *Seattle v. Drew,* 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967). An ordinance is vague on its face if a conviction would not be constitutional in *any* factual setting. *Bellevue v. Miller,* 85 Wn.2d 539, 536 P.2d 603 (1975). The central question is whether the statutory language defines a "hard core" of proscribed conduct. *State v. Zuanich,* 92 Wn.2d 61, 593 P.2d 1314 (1979).

The Bellevue ordinance is directed at such a hard core of conduct. It is not the sort of standardless stop–and–identify statute repeatedly struck down by courts. It clearly proscribes making knowingly false statements to public officers. Thus, the ordinance is not vague on its face.

Next, we inquire whether the ordinance is unconstitutionally vague as applied to Acrey's and Bandle's particular conduct. Their challenge to the ordinance cannot succeed if their conduct is within the hard–core arena of conduct proscribed by the ordinance. *Bellevue v. Miller, supra* at 542. Acrey and Bandle were charged with lying to police about who was driving. Their conduct matches the hard core of prohibited activity. The ordinance is not unconstitutionally vague as applied.

Acrey and Bandle allege for the first time on this appeal that they did not validly waive their rights to counsel and to a jury trial. The City of Bellevue, however, contends that their failure to raise these issues on appeal to the superior court waives that issue on this appeal.

There is no impediment to considering allegations of violation of constitutional rights for the first time on appeal. RAP 2.5(a)(3). Both the Washington Supreme Court and the Court of Appeals have considered constitu-

tional issues not raised in earlier appeals. *State v. McCullum,* 98 Wn.2d 484, 656 P.2d 1064 (1983); *State v. Halvorsen,* 30 Wn. App. 772, 638 P.2d 124 (1981).

We proceed then to the question of whether Acrey and Bandle validly waived right to counsel and a jury trial.

The record on appeal shows that both Acrey and Bandle signed the advice of rights form which also set forth the assigned trial date.

Nowhere in the proceedings before the Bellevue District Court or the Superior Court did either Acrey or Bandle ever assert that they were not advised of their right to a jury trial and counsel, claim a lack of understanding of those rights, or assert that their waivers of those rights were not knowing and voluntary. Even though their appeal to superior court was an RALJ review, RALJ 1.1 *et seq.,* they were free to raise the issues in superior court. *State v. McCullum, supra.* They were represented by counsel in superior court.

In their joint brief on appeal, they do not assert that they did not, in fact, understand their right to counsel and to a jury trial. They argue only that the record does not show a voluntary waiver of those rights.

The responsibility of the State in respect to advising defendants in criminal cases of their constitutional rights in proceedings involving waivers of those rights has undergone many changes in the past 20 years.

*Boykin v. Alabama,* 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709 (1969) involved a petitioner who had pleaded guilty on five indictments for common law robbery and had been sentenced to death on each indictment. At his arraignment where the guilty pleas were entered, "[s]o far as the record shows, the judge asked no questions of petitioner concerning his plea, and petitioner did not address the court." *Boykin,* at 239. Boykin's convictions were reversed because the record was silent on whether he voluntarily and understandingly entered his pleas of guilty.

*State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983) involved the validity of convictions based upon guilty pleas

where there was no showing that the defendant was aware of his Fifth Amendment right not to testify against himself at the time he pleaded guilty. The case holds that the State, when relying upon a conviction based upon a guilty plea to establish habitual criminal status, must show that the defendant was *aware* of his right to remain silent.

> Only by assuring that a defendant is aware of the rights he will have at trial can we make his decision to forego his right to trial "knowing". *See In re Keene,* 95 Wn.2d 203, 214–15, 622 P.2d 360 (1980) (Utter, C.J., concurring and dissenting).
>
> Thus, a defendant who pleads guilty must be aware of his right not to testify against himself at trial. This does not necessarily require express advisement (*see, e.g., Fontaine v. United States,* 526 F.2d 514, 516 (6th Cir. 1975), *cert. denied,* 424 U.S. 973 (1976), and cases cited therein); however, *Boykin does* require that there be *some* evidence in the record which shows that the defendant knew of his right to remain silent (*see, e.g., United States v. Webb,* 433 F.2d 400, 403 (1st Cir. 1970), *cert. denied,* 401 U.S. 958 (1971) (court inferred waiver of privilege against self–incrimination from discussion of guilty plea with counsel)). Moreover, *Boykin* strongly suggested, though it did not require, that the court should assure sufficient evidence by expressly advising defendants of the rights they waive by pleading guilty.

(Footnote omitted.) *Chervenell,* at 312–13.

The *Chervenell* opinion emphasized that "[t]here is no evidence at all in the record" that the defendants were aware of their right to remain silent. *Chervenell,* at 317.

■ The cases sub judice do not involve guilty pleas; the only issues here are whether right to counsel and a jury trial have been waived. For this reason, a logical argument can be made that *Boykin* and *Chervenell* are not applicable here. We believe they are applicable, however, and require that in cases of waiver of counsel or a jury trial or both, the record show that the defendant knowingly and voluntarily waived his rights to counsel and a jury trial.

The records here show defendants were advised of their rights to counsel and a jury trial both orally and in writing.

They were given the opportunity to have any questions or doubts clarified. They had no questions and acknowledged that they understood their rights.

The record meets the requirements of *Boykin* and *Chervenell,* which required that defendants be made *aware* of their constitutional rights before pleading guilty.

The record also supports a finding that both Acrey and Bandle voluntarily waived those rights by proceeding to trial without counsel and without a jury under circumstances where they had ample opportunity to request counsel and/or a jury trial but never did. Standing trial without counsel or a jury under the circumstances of this case is an affirmative act expressing waiver which we treat as the equivalent of a verbal expression of waiver.

Defendants have a right to raise these constitutional issues on appeal to this court even though they did not raise these issues before the District Court or the Superior Court on appeal from the district court judgment. However, their failure to raise these issues earlier can be considered by this court as evidence that defendants' waivers were knowing and voluntary. Nothing in the law requires us to proceed on the assumption that defendants charged with criminal offenses have less than an average intellect. Having full knowledge of their rights and proceeding to trial and through a first appeal without ever once claiming lack of knowledge or understanding of their rights to counsel and a jury trial strongly indicates that they did understand their rights and voluntarily waived them.

*Seattle v. Crumrine,* 98 Wn.2d 62, 653 P.2d 605 (1982), relied on by appellants, does not dictate a different result. In *Crumrine,* the record was silent on the matter of a jury trial, and the court held that the mere failure to demand a jury trial was not sufficient to show a knowing and voluntary waiver. The facts in *Crumrine* are clearly distinguishable from the facts in the cases sub judice.

Appellants also cite *State v. Chavis,* 31 Wn. App. 784, 644 P.2d 1202 (1982) and *State v. Dougherty,* 33 Wn. App. 466, 655 P.2d 1187 (1982) and cases cited therein. Appel-

lants argue that the colloquy between the district court judge and each defendant was not sufficiently searching to meet the requirements of the cited cases to show a knowing and voluntary waiver of counsel.

While we acknowledge the requirements that counsel can be waived validly only when voluntarily and intelligently done, we do not agree that the searching inquiry called for in *Chavis* and *Dougherty* is necessary to a valid waiver in the cases before us.

Appellants cite *Faretta v. California,* 422 U.S. 806, 45 L. Ed. 2d 562, 95 S. Ct. 2525 (1975) as authority that a trial judge should insure that a defendant is aware of the disadvantages of self–representation before accepting his waiver of counsel. This part of the *Faretta* opinion is dicta since it was not necessary to the decision in the case, which was that Faretta should have been allowed to proceed to trial *without* counsel.

While language can be found in other cases to the same general effect, the critical and fundamental requirement is that defendants will not be allowed to waive constitutional rights such as the right to counsel except on a record showing the waiver to have been knowingly and voluntarily made.

As stated earlier, from a totality of the circumstances here, we conclude the record shows a knowing and voluntary waiver of both a jury trial and right to counsel by both defendants.

Judgment affirmed in both cases.

CORBETT, A.C.J., and ANDERSEN, J., concur.

Review granted by Supreme Court May 25, 1984.