[No. 22917-6-I.   Division One.   January 8, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. KENNETH HARTLEY, *Appellant.*

*Dennis Benjamin* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Cynthia S.C. Gannett, Deputy,* for respondent.

PEKELIS, J.—Kenneth Hartley appeals from the trial court's determination that he knowingly, intelligently and voluntarily waived his not guilty by insanity (NGI) plea. He contends that the trial court erred in allowing his trial counsel to testify on this issue, arguing that the attorney–client privilege barred the testimony.

In a previous appeal, Hartley appealed from his conviction for second degree assault. See *State v. Hartley,* noted at 49 Wn. App. 1013 (1987) (*Hartley* I). An NGI plea had been entered on Hartley's behalf prior to trial, but was later withdrawn. On appeal, Hartley argued that the record did not support the trial court's ruling that he knowingly, intelligently and voluntarily waived his NGI plea. *Hartley* I, slip op. at 2. The court in *Hartley* I concluded that the record was inadequate to determine whether Hartley had knowingly, intelligently and voluntarily waived his NGI

plea and remanded the case for a hearing on this issue. *Hartley* I, slip op. at 3, 8.

On remand, the State called Hartley's trial counsel to testify. Hartley objected to the testimony of his trial counsel on the ground of attorney–client privilege. The trial court overruled the objection, reasoning that Hartley had waived the attorney–client privilege by raising the issue of whether he had voluntarily withdrawn his NGI plea.

Hartley's trial counsel then testified that it was his practice to inform clients of their options, including the advantages and disadvantages of asserting an insanity defense. Hartley's counsel also testified that he and Hartley discussed whether or not Hartley should withdraw his NGI plea. Hartley himself testified and could not recall discussing the particulars of withdrawal of the plea with his attorney.

At the conclusion of the hearing, the trial court found that Hartley's trial counsel had explained to him the advantages and disadvantages of proceeding with the insanity plea or of withdrawing it. The court further found that Hartley voluntarily withdrew the NGI plea, and concluded that he had executed a valid waiver of the insanity defense.

Hartley contends that the trial court erred in ruling that he waived the attorney–client privilege when he raised the issue of whether the withdrawal of his NGI plea was knowing, intelligent and voluntary. He further argues that the voluntariness of such a waiver must be determined solely on the basis of the colloquy between the trial court which took the waiver and the defendant. Hartley seems to contend that this is required by *State v. Jones,* 99 Wn.2d 735, 664 P.2d 1216 (1983). We disagree.

In *Jones,* 99 Wn.2d at 737, the court held that a trial court has a duty to assure that a defendant's waiver of an NGI plea is intelligent and voluntary. The trial court must "'conduct an inquiry designed to assure that defendant has been fully informed of alternatives available, comprehends the consequences of failing to assert the [insanity] defense,

and freely chooses to raise or waive the defense.'" *Jones,* 99 Wn.2d at 745 (quoting *Frendak v. United States,* 408 A.2d 364 (D.C. 1979)).

■ The court did not, as Hartley appears to argue, hold that a later challenge to the voluntariness of the waiver of an NGI plea must be determined solely on the basis of the colloquy between the trial court and the defendant. Because the defendant in *Jones* was entitled to a new trial in any event, remand for a determination of the voluntariness issue was not appropriate and the question of the type of evidence which could have been elicited at such a hearing was never raised. *Jones,* 99 Wn.2d at 747–48.

■■ We find the authority cited by the State to be persuasive. In *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983), our Supreme Court considered the issue of what evidence may be considered in assessing a challenge to the voluntariness of a plea in the context of the validity of guilty pleas. The court held that guilty pleas may not be used to establish habitual offender status unless the State shows that the defendant was aware of his right not to testify against himself at the time the plea was entered. *Chervenell,* 99 Wn.2d at 310–12. The court remanded for a hearing on whether the defendant was aware of the right to remain silent, and held that this might be shown in a number of ways, including testimony from the defendant's trial counsel. *Chervenell,* 99 Wn.2d at 315–16.

The court squarely addressed the issue confronting us here, namely whether the attorney–client privilege bars such testimony. *Chervenell,* 99 Wn.2d at 316. In reaching the conclusion that it did not, the court considered the purposes of the attorney–client privilege. *Chervenell,* 99 Wn.2d at 316. "Its central purpose is to encourage free and open attorney–client communication by assuring the client that his communications will be neither directly nor indirectly disclosed to others." *Chervenell,* 99 Wn.2d at 316. Since disclosure of the fact that an attorney has advised a client of the privilege against self–incrimination is unlikely to indirectly disclose client communications, the privilege

does not bar disclosure of such advice.[1] *Chervenell,* 99 Wn.2d at 316–17.

Hartley urges this court not to follow *Chervenell* because the court's statements about the applicability of the attorney–client privilege are dicta. While we agree that the statements were not necessary to resolve the precise issue before the court, they were certainly not inadvertent. On the contrary, the court clearly developed its position on what evidence could be considered and, in particular, the applicability of the attorney–client privilege. *See Chervenell,* 99 Wn.2d at 315–16. We agree with the court's analysis and adopt it here.

As in *Chervenell,* the testimony of Hartley's trial counsel did not contravene the purposes of the attorney–client privilege. *See Chervenell,* 99 Wn.2d at 316. The fact that Hartley's attorney disclosed that he advised his client of the advantages and disadvantages of an NGI plea did not indirectly disclose client communications. *See Chervenell,* 99 Wn.2d at 316. Thus, we conclude that the attorney–client privilege did not bar disclosure of such advice. *See Chervenell,* 99 Wn.2d at 316–17. Hartley does not claim that any client communications were disclosed by counsel's testimony, and we find none.

Thus, we affirm the trial court's ruling while disagreeing slightly with its rationale. Whereas the trial court held that Hartley had waived the attorney–client privilege, we conclude that the privilege did not in fact apply. *See Chervenell,* 99 Wn.2d at 316–17 & n.3. The trial court did not err in allowing Hartley's trial counsel to testify as to what he told Hartley about pursuing his NGI plea.[2]

---

[1] However, "[f]urther probes into the reason for the advice and the circumstances in which it was given will be unnecessary and should not be permitted, as such probes are much more likely to indirectly disclose client communications." *Chervenell,* 99 Wn.2d at 317.

[2] Hartley does not challenge the trial court's determination that he voluntarily withdrew his NGI plea and so was not entitled to a new trial. We therefore do not address this issue.

567

Affirmed.

SWANSON and WINSOR, JJ., concur.