## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>Respondent,<br><br>v.<br><br>RONALD HARRISON SNIDER, aka<br>RONALD HARRISON SNYDER,<br>RONALD H. SNIDER,<br><br>Appellant. | No. 53114-3-II<br><br><br>UNPUBLISHED OPINION |

MAXA, J. – Ronald Snider appeals his conviction for failure to register as a sex offender – third offense for failing to re-register after he left his previous residence. He claims that his conviction must be vacated because his guilty plea was not knowing, voluntary, and intelligent.

Under RCW 9A.44.132(1)[1], a person commits the crime of failure to register as a sex offender if the person has a duty to register under RCW 9A.44.130 and "knowingly" fails to register his whereabouts with the appropriate county sheriff's department. Former RCW 9A.44.130(5) (2015) requires that a sex offender re-register after changing his or her residence address. The State charged Snider with failing to resister after he left his residence. Snider

---

[1] RCW 9A.44.132 has been amended since the events of this case transpired. Because these amendments are not material to this case, we do not include the word "former" before RCW 9A.44.132.

entered a guilty plea after a lengthy colloquy with the trial court regarding the lack of relevance between his alleged mental illness and the knowledge requirement for failure to register.

Snider argues that the trial court affirmatively misinformed him regarding the knowledge requirement of the offense when the court told him that the State was required to prove only that he had knowledge of the responsibility to register. He contends that the State also had to prove that he knew he had knowingly changed his residence.

The trial court did fail to mention that the State had to prove that Snider had knowingly changed his residence. However, under the specific circumstances of the trial court's colloquy with Snider, the only issue that the court needed to address was whether Snider knew that he was required to register. Therefore, the court did not misinform Snider and there is no basis for finding that Snider's guilty plea was not knowing, voluntary, and intelligent. Accordingly, we affirm Snider's conviction.

FACTS

*Background*

Snider was a Level I sex offender who was required to register his place of residence with the appropriate county sheriff's department under former RCW 9A.44.130. The last time Snider registered with the Pierce County Sheriff's Department was in August 2016. At that time, Snider lived in transitional housing for sex offenders.

On June 15, 2017, a community corrections officer (CCO) attempted to locate Snider at the transitional housing, but the manager informed her that he had been gone for a few days. The manager also told the CCO that Snider's belongings were packed up and were no longer in his room.

On June 24, a detective from the Pierce County Sheriff's Department stopped by the transitional housing, and two residents informed him that Snider no longer was living there. In August, the manager informed the detective that Snider had lived in the transitional housing until June 2017, when he left. The State charged Snider with the crime of failure to register as a sex offender – third offense.

*Pretrial Matters*

The trial court granted Snider's motion to represent himself. However, Snider agreed to the appointment of standby counsel. Later, Snider confirmed that he did not need a competency examination. Two months before trial, Snider informed the trial court and the State that he would like to change his defense from general denial to diminished capacity.

*Trial Court Colloquy with Snider*

On the scheduled day of trial, Snider requested a two-week continuance because he still had not received records from the Veterans' Administration (VA), which he believed were relevant to his diminished capacity defense. He stated in a colloquy with the trial court that the documents would show that medications for his bipolar disorder prevented him from functioning in society, such as knowing how to take care of himself. In response to the court's question about how the VA evidence would support a diminished capacity defense, Snider stated, "The ability to have the knowing and the willingness to understand the responsibilities and the accountability that was due to me while, in fact, the medications were causing these disruptions." Report of Proceedings (RP) (Oct. 2, 2018) at 8.

The trial court stated, "The only thing you need to know about in this case is that you had a prior responsibility to report. That's it. . . . [W]hat you've told me so far doesn't seem to go to that specific issue." RP (Oct. 2, 2018) at 9. Snider responded:

[T]here was not just one but multiple mishaps with the medications and just knowing how to take care of myself, as well as the witnesses will provide when it comes to the time that they, too, will -- will share . . . evidence that how distorted I came to even knowing how to get myself back home. Things like that.

RP (Oct. 2, 2018) at 11.

The trial court denied Snider's continuance motion. The court clarified to Snider that "[t]he mental state here requires mental state of knowledge, knowledge of the responsibility to register." RP (Oct. 2, 2018) at 13. The court further stated:

The defendant must present evidence of mental disorder. Defendant's telling me that through the mental health experts he could bring there would be a showing of mental disorder, perhaps bipolar, perhaps other issues. And I accept that for the purposes of this argument and for this decision.

But the expert testimony must logically and reasonably connect the defendant's alleged mental condition and assert an inability to perform mental state required for the crime charged. In other words, it has to show that the bipolar or whatever the diagnosis there may have been interfered with the ability to form the mental state, which is knowledge, of the crime charged, which is *knowledge of the responsibility to register. That is the only thing at issue in this case*.

RP (Oct. 2, 2018) at 13 (emphasis added).

The State then made a motion in limine on Snider's diminished capacity defense. While discussing the motion in limine, the trial court told Snider:

You need to show the Court how the mental disability . . . interferes with the ability to know the registration requirement.
. . . .

It's not whether or not you have mental disability or mental illness that you're trying to deal with; that's not the issue. The issue is how does that impact your ability *to know whether or not you're required to register.*

RP (Oct. 2, 2018) at 20-21 (emphasis added).

Snider stated as follows:

[The Department of Corrections] requires that I take the medications. It wasn't something that I was choosing to do.
. . . .

4

That's where the issue was coming in to having the ability to say it was a change of address. It wasn't a change of -- it wasn't the knowledge of registration. *It was the change of address and the disruption in the stability that caused that to happen*.

So it wasn't while I was -- I completely understand the registration factors. But the problem with it was it was *the ability to not have stability in the address changes*, and the disruption that was taking place was so much of the outside interference taking place by the medications.

RP (Oct. 2, 2018) at 21-22 (emphasis added). The trial court granted the State's motion in limine to exclude Snider's diminished capacity defense.

Then Snider argued that the VA records contained documents from a psychologist and psychiatrist who would be his expert witnesses. The trial court stated:

There are two parts to this. Expert, yes. But the expert that would provide particular testimony that's relevant in this case, not that you have mental health problems; that's not the problem here, that's not the issue we're getting into. It's whether or not a specific mental health issue, specific mental health condition . . . create[d] the inability for you to form *the proper mental state, which is knowledge of the duty to report. That's it.* That's it. That you have other mental health issues is not relevant.

RP (Oct. 2, 2018) at 28 (emphasis added).

The trial court suggested a recess to allow Snider some time to discuss his options with his standby counsel before commencing with the jury trial. When court reconvened, Snider presented a signed guilty plea statement. The trial court orally reviewed at great length the guilty plea statement with Snider. The court also asked Snider several questions to ensure that Snider understood the consequences of his guilty plea.

Snider then pleaded guilty to the crime of failure to register as a sex offender – third offense. The trial court found Snider's guilty plea to be knowing, intelligent, and voluntary. Snider appeals his conviction.

5

ANALYSIS

A.    FAILURE TO REGISTER AS A SEX OFFENDER

The State charged Snider under RCW 9A.44.132(1), which states that "[a] person commits the crime of failure to register as a sex offender if the person has a duty to register . . . for a felony sex offense and *knowingly* fails to comply with any of the requirements of RCW 9A.44.130." (Emphasis added.) In other words, the State was required to establish that the defendant (1) had a duty to register and (2) knowingly failed to comply with the registration requirements.

A sex offender is required to register with the sheriff of the county of the sex offender's residence. Former RCW 9A.44.130(1)(a). If the sex offender changes residence addresses within the same county, he or she must notify the sheriff within three business days. Former RCW 9A.44.130(5)(a). If the sex offender ceases to have a fixed residence, he or she also must notify the sheriff within three business days. Former RCW 9A.44.130(6)(a), (b).

The criminal code defines "knowledge" as follows:

A person knows or acts knowingly or with knowledge when:
(i) he or she is aware of a fact, facts, or circumstances or result described by a statute defining an offense; or
(ii) he or she has information which would lead a reasonable person in the same situation to believe that facts exist which facts are described by a statute defining an offense.

RCW 9A.08.010(1)(b).

B.    VALIDITY OF GUILTY PLEA

Snider argues that his guilty plea was not knowing, voluntary, and intelligent because the trial court affirmatively misinformed him of the knowledge element of failure to register as a sex offender and how it applied to the facts of his case. We disagree.

6

1.  Legal Principles

Due process requires that a guilty plea be entered knowingly, voluntarily, and intelligently. *State v. Robinson*, 172 Wn.2d 783, 794, 263 P.3d 1233 (2011). Under CrR 4.2(d), a trial court cannot accept a guilty plea without first determining that the plea was made "voluntarily, competently and with an understanding of the nature of the charge and the consequences of the plea." *See also Robinson*, 172 Wn.2d at 791-92. "The defendant must understand the facts of his or her case in relation to the elements of the crime charged." *State v. Codiga*, 162 Wn.2d 912, 923-24, 175 P.3d 1082 (2008).

A guilty plea cannot be constitutionally valid if the defendant is not aware of the basic elements of the crime being charged. *See State v. Chervenell*, 99 Wn.2d 309, 317-18, 662 P.2d 836 (1983). At a minimum, the defendant must be aware of the requisite state of mind necessary to constitute the charged crime. *In re Pers. Restraint of Montoya*, 109 Wn.2d 270, 278, 744 P.2d 340 (1987). The validity of a guilty plea is called into question when the court fails to inform the defendant of an essential element of the charged crime. *See Chervenell*, 99 Wn.2d at 317-19.

We review a defendant's guilty plea de novo because whether the defendant entered a guilty plea knowingly, voluntarily, and intelligently is a constitutional issue. *State v. Harris*, 4 Wn. App. 2d 506, 512, 422 P.3d 482 (2018).

2.  Alleged Misstatement of the Law

Snider argues that the trial court misstated the knowledge requirement of failure to register as a sex offender when the court told him that the State had to prove only that he knew he had to register. He claims that the State also had to prove that (1) he knew that he had changed his residence address and (2) he knew that he had not re-registered after doing so.

Snider relies on *State v. Drake*, 149 Wn. App. 88, 201 P.3d 1093 (2009), to argue that the State must prove more than the knowledge of the duty to register. In *Drake*, a sex offender who was required to register failed to timely pay his rent, which led to apartment management removing his belongings from his apartment and placing them into storage. *Id.* at 91. A few weeks later, someone other than the sex offender picked up those belongings. *Id.* The State charged the sex offender with knowingly failing to register by not notifying the sheriff with his updated address or his transient status. *Id.* at 92.

The court determined that there was no evidence that the defendant knew that his residence had changed. *Id.* at 94. The court emphasized that the State presented no evidence that the sex offender (1) was aware that he had been ousted from his apartment, (2) had changed addresses or maintained a residence elsewhere, or (3) did not intend to return to his apartment. *Id.* Therefore, the court held that the evidence was insufficient to convict the sex offender of knowingly failing to register. *Id.* at 96.

*Drake* establishes the narrow rule that (1) when a failure to register charge is based on the defendant failing to re-register after a change of residence address and (2) the defendant loses his or her residence because of eviction or otherwise, (3) the State must prove that the defendant had knowledge that he or she had lost that residence. *See id.* at 94. Without such proof, the State could not show that the defendant knowingly failed to re-register.

But here, there was no indication that Snider had been evicted or otherwise had lost his residence because of a third party's action. In his lengthy discussions with the trial court, Snider suggested that his medication caused him to leave his registered residence. But he never contested the fact that he knew that he had left. Therefore, the trial court had no reason to address that issue in its comments to Snider.

*Drake* also supports a broader rule that when a failure to register charge is based on the defendant failing to re-register after a change of residence address, the State must prove that the defendant did in fact leave his or her previous residence. *See Drake*, 149 Wn. App. at 94-95. This rule is consistent with RCW 9A.44.132(1). If a properly registered sex offender has not left his or her previous residence, there is no duty to re-register and therefore no failure "to comply with any of the requirements of RCW 9A.44.130." RCW 9A.44.132(1).

Based on this rule, the trial court's statement that the State had to prove only that Snider knew he had to register was incomplete. The State also had to prove as a threshold matter that Snider actually had left his residence at the transitional housing. But during his lengthy colloquy with the trial court, Snider gave no indication that he was denying the fact that he had left his previous residence. Instead, Snider appeared to acknowledge that he had left his residence, but he claimed that his medications caused his mental instability that resulted in the change of addresses. Therefore, whether Snider actually had left his registered residence was not an issue that the court had to address in their discussion. The only question the court needed to address was whether Snider knew that he had to re-register.

When the trial court and Snider discussed whether his alleged diminished mental capacity could negate the knowledge requirement of RCW 9A.44.132(1), they both appeared to assume that Snider had left his residence and that former RCW 9A.44.130(5) or (6) required him to re-register. Under that assumption, the question was whether Snider knew that he had to re-register. *And in that context*, the court was correct that the only issue was whether Snider knew that he had a duty to re-register.

The trial court certainly could have told Snider that the State also had to prove that he had left his previous address. But here, the failure to inform Snider that the State had to prove that he

knowingly had left his residence was not at issue because Snider implicitly conceded that fact. And given the subject of the court's colloquy with Snider, whether Snider actually changed his address and knew he had changed his address was not material to their discussions.

We conclude that under the specific circumstances of this case, the trial court did not misstate the knowledge requirement by telling Snider that the only issue was whether Snider knew that he had a duty to register. Snider does not state any other basis for challenging his guilty plea. Therefore, we hold that Snider's guilty plea was knowing, voluntary, and intelligent.

## CONCLUSION

We hold that Snider entered his guilty plea knowingly, voluntarily, and intelligently. Accordingly, we affirm Snider's conviction.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

MAXA, J.

We concur:

WORSWICK, P.J.

MELNICK, J.