262 P.3d 89 (2011)
STATE of Washington, Appellant,
v.
Kenneth Eugene LAMB, Respondent.
Nos. 39849-4-II, 40379-0-II.
Court of Appeals of Washington, Division 2.
September 13, 2011.
*91 Brian Patrick Wendt, Clallam County Prosecuting Attorney's Office, Port Angeles, WA, for Appellant.
Loren Oakley, Clallam Public Defender, Port Angeles, WA, for Respondent.

PUBLISHED OPINION
QUINN-BRINTNALL, J.
¶ 1 This case concerns predicate offenses for unlawful firearm possession charges brought against Kenneth Lamb. In 2009, the Clallam County Superior Court allowed Lamb to withdraw a 1991 guilty plea in a juvenile second degree burglary case and vacated the related disposition. The trial court explained that, at the time of his plea, Lamb did not have notice of the 1991 disposition's impact on his Second Amendment rights, even though our State's unlawful possession of a firearm statute did not preclude gun possession by juvenile felony offenders until 1992, a year after Lamb pleaded guilty. Laws of 1992, ch. 205, § 118. The trial court *92 then refused the State's request to amend the charging documents to designate a different predicate offense for the unlawful firearm possession charges and dismissed the firearm charges with prejudice. All of the trial court's decisions were rooted in its subjective belief that allowing the present unlawful firearm possession charges to proceed based on the 1991 juvenile burglary adjudication would be manifestly unjust. The State appeals, alleging that the trial court erred by (1) allowing Lamb to withdraw his 1991 guilty plea, (2) vacating the 1991 burglary disposition, (3) denying the State's pretrial motion to amend the charging information, and (4) dismissing the unlawful firearm possession charges with prejudice.
¶ 2 We hold that the trial court committed an error of law, and consequently abused its discretion, when it allowed Lamb to withdraw his 1991 guilty plea and when it vacated his 1991 plea-based disposition, because the juvenile court did not err by failing to advise Lamb of the then nonexistent collateral consequence of limiting his firearm possession rights. The trial court also improperly denied the State's motion to amend the charging document to allege a different predicate conviction which, if proved, would have prohibited Lamb's firearm possession as a matter of law. Last, we hold that the trial court abused its discretion when it dismissed Lamb's firearm possession charges. We reverse and remand for trial and other proceedings consistent with this opinion.

FACTS
¶ 3 In September 1986, the State charged Lamb in juvenile court with indecent liberties in violation of former RCW 9A.88.100 (1975), recodified as RCW 9A.44.100 (Laws of 1979, 1st Ex. Sess., ch. 244, § 17).[1] This charge resulted from an incident involving then 11-year-old Lamb who had sexual contact with a male victim, who was under the age of 14. In August 1987, Lamb pleaded guilty to this charge, and the trial court committed him to the Department of Juvenile Rehabilitation for 8 to 12 weeks.
¶ 4 In April 1991, the State charged then 16-year-old Lamb in juvenile court with second degree burglary, a class B felony, under RCW 9A.52.030. In exchange for a lenient sentence, Lamb pleaded guilty to the burglary charge. On June 5, 1991, Clallam County Juvenile Court accepted the guilty plea and sentenced Lamb to 5 days of detention, 24 hours of community service, 6 months of community supervision, and imposed a $25 fine. No one advised Lamb that he would lose his ability to possess firearms as a result of this adjudication. A year later, the legislature extended the prohibition on possessing certain firearms to juveniles adjudicated of a crime of violence or certain felony offenses. Laws of 1992, ch. 205, § 118 (effective June 11, 1992); State v. Semakula, 88 Wash.App. 719, 722, 946 P.2d 795 (1997), review denied, 134 Wash.2d 1022, 958 P.2d 317 (1998).
¶ 5 Between 1992 and 2000, Lamb committed several misdemeanor offenses. Lamb pleaded guilty to driving a motor vehicle without a valid driver's license and negligent driving. And after pleading not guilty, Lamb was convicted of failing to transfer the title of a motor vehicle and third degree driving with a suspended license.
¶ 6 On June 16, 2009, the State charged Lamb with 3 counts of theft of a firearm, under RCW 9A.56.300(1); 10 counts of second degree unlawful possession of a firearm, under RCW 9.41.040(2)(a)(i);[2] and 1 count of *93 manufacturing marijuana, under RCW 69.50.401.
¶ 7 On July 31, citing JuCR 1.4, CrR 4.2, and CrR 7.8, Lamb moved to withdraw his 1991 burglary guilty plea and vacate the related disposition. On September 23, the trial court held a hearing to consider Lamb's motion. At the hearing, the trial court heard testimony from several witnesses despite the State's objection that the testimony was irrelevant because the legality of the plea-based conviction did not rest on factual findings.
¶ 8 Lamb testified at the hearing that no one informed him during the 1991 plea bargaining process that his juvenile burglary disposition could impact his firearm possession rights. If someone had informed Lamb the impact the adjudication would have on his firearm rights, Lamb stated that he would not have pleaded guilty because his firearm rights are "very important to [him]" and he thought the State had a "very weak" burglary case against him. Report of Proceedings (RP) (Sept. 23, 2009) at 18-19. Lamb testified that he first learned of his lost firearm possession rights in 2009 when the State filed the current unlawful firearm possession charges. He testified that he had used guns his entire life, since the age of five or six, for recreational and hunting purposes. And Lamb testified that he had a gun collection his father had given him that he hoped to pass on to his children.
¶ 9 Eugene Lamb, Lamb's father, also testified at the hearing that he advised his son to plead guilty in 1991 because of the proposed lenient sentence. Based on his experience as a law enforcement officer at the Port Townsend Police Department, Eugene Lamb believed that the juvenile court disposition would not impact his son's firearm rights. Eugene Lamb also verified that no one ever informed his son that the burglary disposition would impact his firearm rights.
¶ 10 Mike Crabb, one of Lamb's hunting friends, testified that around 1997, he went with Lamb to purchase a hunting rifle, license, and tag. Crabb testified that, based on his knowledge, Lamb had no problem securing the rifle, license, or tag. Lamb confirmed Crabb's testimony, stating that after submitting his background check paperwork and obtaining approval, he bought a rifle.
¶ 11 Lamb's friend, Darren Hyatt, testified that around 2003, he went on a camping trip with Lamb and another friend. During the trip, they came across a police roadblock set up to investigate "suspicious gunfire." RP (Sept. 23, 2009) at 13. The officer secured all three passengers, their identification documents (IDs), and a gun that Lamb admitted he had in the car. The officer took the items and "went back to his vehicle, got on his radio[ and] was there ... quite a while." RP (Sept. 23, 2009) at 13. Hyatt believed that the officer "ran the weapon and everybody's ID" before he returned the gun and identification documents and let them go. RP (Sept. 23, 2009) at 13. Lamb confirmed Hyatt's testimony, stating that he believed the officer was a "federal ... game warden." RP (Sept. 23, 2009) at 22.
¶ 12 Lamb argued that he did not knowingly, voluntarily, and intelligently enter his 1991 guilty plea because he was not informed that the resulting burglary disposition would terminate his firearm possession rights. Although he conceded that, in 1991, the State and trial court did not have a duty to inform him of a consequence that did not then exist, Lamb still claimed that he could not have knowingly, voluntarily, and intelligently entered a plea because he did not understand the consequences of his action. In the alternative, Lamb argued that enforcing the plea created a manifest injustice because the State changed the law after his plea and subsequent interactions with the State and other law enforcement officials led him to believe that he could legally possess firearms.
¶ 13 The trial court initially issued an oral ruling allowing Lamb to withdraw the 1991 burglary guilty plea because it believed that leaving the plea-based disposition in place *94 would create a present day manifest injustice. In part, the trial court believed that Lamb would have qualified for and would have restored his firearm possession rights had he known they were revoked. The trial court stated, "I think it would be a manifest injustice at this point to subject Mr. Lamb to 10 counts of being a felon in possession of a firearm based upon a plea to a single felony when he was 16 years old and had no idea at that time nor any idea since that he was not entitled like all citizens to keep and bear arms." RP (Sept. 23, 2009) at 53.
¶ 14 On September 30, 2009, the trial court entered formal findings of fact, conclusions of law, and an order granting the withdrawal of the 1991 guilty plea and vacating the related disposition. The trial court findings included that the unlawful possession of firearms statute did not apply to juveniles at the time of Lamb's 1991 plea agreement and disposition and that "ignorance of the law is no defense." Clerk's Papers (CP) at 11. But the trial court concluded that Lamb would have sought to restore his rights if he had known they had been terminated and that "[t]hose rights would have been restored because of the respondent's lack of criminal history subsequent to [the 1991 burglary disposition]." CP at 13. The trial court summarized its ruling as follows:
[Lamb] did not have actual knowledge that [the 1991 burglary disposition] had terminated his right to bear, keep, own, or possess firearms. Despite ignorance of the law not being an excuse, under the totality of the facts and circumstances in this case denying this motion to withdraw the plea of guilty and vacate the order of disposition would be fundamentally unfair and constitute a manifest injustice.
CP at 13. The State appealed the trial court's decision that same day.[3]
¶ 15 Lamb filed a motion to dismiss the 10 unlawful possession of a firearm charges, asserting that the State could not prove the predicate felony element of the offenses. The State moved to amend the charging information to change the predicate felony offense for five of the second degree unlawful possession of a firearm counts to Lamb's 1987 indecent liberties disposition, and leave the second degree burglary disposition as the predicate felony offense for the other five counts.[4] The State opposed Lamb's motion to dismiss the charges and argued that the burglary disposition, which existed on the date of the charged offense, could still serve as the predicate felony offense.
¶ 16 On February 12, 2010, the trial court entered an order denying the State's motion to amend the charging information and dismissing all 10 unlawful possession of a firearm charges with prejudice. The trial court's written memorandum opinion provided that, even if the State had raised the 1987 indecent liberties disposition as the predicate offense for the unlawful firearm possession charges earlier, moving forward with the current charges would be manifestly unjust because Lamb had no notice that juvenile dispositions could restrict his firearm rights. Lamb did not request, and the trial court did not grant, an order vacating the 1987 indecent liberties disposition or the associated guilty plea. The State filed an appeal of the February 12 order and we consolidated the State's two appeals.[5]

*95 DISCUSSION

Guilty Plea Withdrawal
¶ 17 In general, the parties dispute (1) the timeliness of Lamb's guilty plea withdrawal motion;[6] (2) whether the loss of Lamb's firearm rights is a collateral or direct consequence, which relates to whether Lamb knowingly, voluntarily, and intelligently entered his 1991 guilty plea; and (3) if the trial court erred when it refused to consider Lamb's criminal history when it found that Lamb's firearms rights could have been restored. All of the parties' arguments are disputes about whether the trial court abused its discretion by committing an error of law in its decision-making process under the applicable Superior Court Criminal Rules (CrRs). We hold that the trial court committed an error of law, and consequently abused its discretion, when it applied CrR 4.2's "manifest injustice" standard to Lamb's post-conviction plea withdrawal motion, which is governed by CrR 7.8 not CrR 4.2. And because the State proved the constitutional validity of the 1991 guilty plea and disposition beyond a reasonable doubt, we reverse the trial court's order allowing Lamb to withdraw his 1991 guilty plea, reinstate the 1991 disposition, and remand for further proceedings consistent with this opinion.
¶ 18 We review a trial court's decision on a defendant's motion to withdraw a guilty plea for an abuse of discretion. State v. Marshall, 144 Wash.2d 266, 280, 27 P.3d 192 (2001). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds; this standard is also violated when a trial court makes a reasonable decision but applies the wrong legal standard or bases its ruling on an erroneous view of the law. State v. Dixon, 159 Wash.2d 65, 75-76, 147 P.3d 991 (2006) (quoting State v. Rohrich, 149 Wash.2d 647, 654, 71 P.3d 638 (2003)); State v. Hudson, 150 Wash.App. 646, 652, 208 P.3d 1236 (2009). When we review whether a trial court applied an incorrect legal standard, we review de novo the choice of law and its application to the facts in the case. State v. Haney, 125 Wash.App. 118, 123, 104 P.3d 36 (2005); State v. Whelchel, 97 Wash.App. 813, 817, 988 P.2d 20 (1999), review denied, 140 Wash.2d 1024, 10 P.3d 405 (2000); see State v. Carlyle, 84 Wash.App. 33, 35-36, 925 P.2d 635 (1996).[7]
¶ 19 Reviewing the parties' arguments under the framework established by the CrRs, we hold that the trial court committed an error of law by incorrectly applying CrR 4.2 legal theories to its ruling on a motion governed by CrR 7.8. As an initial matter, Lamb purported to request relief from his 1991 guilty plea and juvenile disposition under CrR 4.2 and CrR 7.8.[8] Here, if the criminal rules governed, the correct legal standard to apply would be CrR 7.8.[9] CrR 7.8 applies to post-judgment motions for relief while CrR 4.2(f) applies only to pre-judgment motions to withdraw a guilty plea. CrR 4.2(f) (stating that "[i]f the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8"). Thus, the trial court erred when it decided Lamb's motion under standards set out in CrR 4.2.
*96 ¶ 20 CrR 7.8 states that a trial court may grant relief from a final judgment only for one of five enumerated reasons. CrR 7.8(b) allows a trial court to grant relief from a final judgment, order, or proceeding for the following five reasons:
(1) Mistakes, inadvertence, surprise, excusable neglect or irregularity in obtaining a judgment or order;
(2) Newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 7.5;
(3) Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;
(4) The judgment is void; or
(5) Any other reason justifying relief from the operation of the judgment.
¶ 21 Notably, "manifest injustice," on which the trial court based its decision in this case, is not one of the five enumerated reasons for post-judgment relief under CrR 7.8(b). Washington court's have limited the scope of CrR 7.8(b)(5)'s "`[a]ny other reason justifying relief'" to "extraordinary circumstances" that are "fundamental, substantial irregularities in the court's proceedings or to irregularities extraneous to the court's action." State v. Olivera-Avila, 89 Wash.App. 313, 319, 949 P.2d 824 (1997); see State v. Aguirre, 73 Wash.App. 682, 688, 871 P.2d 616, review denied, 124 Wash.2d 1028, 883 P.2d 326 (1994).
¶ 22 Although Division Three of this court previously interpreted "extraordinary circumstances" to include circumstances "`where the interests of justice most urgently require'" correction, we are not persuaded that such a broad interpretation is appropriate. See State v. Zavala-Reynoso, 127 Wash.App. 119, 122-23, 110 P.3d 827 (2005) (quoting State v. Cortez, 73 Wash.App. 838, 841-42, 871 P.2d 660 (1994)). Division Three's analysis in Zavala-Reynoso and Cortez relies on State v. Shove, 113 Wash.2d 83, 776 P.2d 132 (1989). In Shove, our Supreme Court vacated judgments and cited only generally to several statutes and court rules, including CrR 7.8(b), noting that there are only "limited circumstances where the interests of justice most urgently require" vacating a final judgment. 113 Wash.2d at 88, 776 P.2d 132. But in Shove, our Supreme Court did not specifically analyze CrR 7.8(b)(5).
¶ 23 Notably absent in CrR 7.8 is a reference to manifest injustice, as understood in CrR 4.2(f). Accordingly, the manifest injustice basis cannot support relief from a final judgment in a CrR 7.8 motion. Thus, even assuming that CrR 7.8 was the proper framework for the trial court to consider Lamb's motion, which for other reasons we do not hold,[10] the trial court committed a legal error when making its ruling by importing the manifest injustice standard of CrR 4.2(f) into CrR 7.8.[11]
*97 ¶ 24 In addition, Lamb's challenge below could also be considered a challenge to the constitutionality of his 1991 burglary disposition, because he was not aware that his guilty plea would result in losing his Second Amendment rights. State v. Chervenell, 99 Wash.2d 309, 312, 662 P.2d 836 (1983). But the extension of our State's unlawful possession of a firearm statute to juvenile felony dispositions did not occur until after Lamb's 1991 disposition and did not render his guilty plea unconstitutional as having been involuntary or unknowing. Laws of 1992, ch. 205, § 118 (effective June 11, 1992). Moreover, the trial court's duty to inform adult and juvenile defendant's of the loss of their firearm rights during guilty plea proceedings did not take effect until 1994. Laws of 1994, 1st Sp. Sess., ch. 7, § 404 (enacting RCW 9.41.047).
¶ 25 We previously held that providing notification to offenders of lost firearm rights due to post-1994 convictions but not pre-1994 convictions did not violate equal protection. State v. Reed, 84 Wash.App. 379, 386-87, 928 P.2d 469 (1997). The Reed court noted that providing "as many as possible" pre-1994 convictees notice of their revoked rights "is a worthwhile goal" but not constitutionally required. 84 Wash.App. at 386, 928 P.2d 469. Thus, there is no basis for finding that Lamb did not knowingly and voluntarily enter his 1991 burglary guilty plea, or his 1987 indecent liberties guilty plea if Lamb had also challenged it.
¶ 26 Accordingly, the State rebutted Lamb's constitutionality challenges by proving beyond a reasonable doubt the knowing and voluntary nature of his 1991 guilty plea. The 1991 juvenile court had no duty to provide notice of Lamb's revoked firearm rights because the revocation law did not apply to juvenile dispositions at the time he entered that plea. In addition, the State did not have a duty to notify Lamb of the revocation of his firearm rights after the subsequent change in the law. Reed, 84 Wash.App. at 386, 928 P.2d 469. The trial court erred by revoking Lamb's 1991 guilty plea and vacating the corresponding disposition.[12] Accordingly, we reverse the trial court's decisions allowing Lamb to withdraw his 1991 guilty plea and vacating the corresponding disposition.[13]

*98 Amending the Charging Information
¶ 27 Next, the State challenges the trial court's denial of its request to amend the information. We hold that the trial court abused its discretion when it refused to allow amendments to the information to include Lamb's prior indecent liberties adjudication as the predicate offense for five of the unlawful firearm possession charges.
¶ 28 CrR 2.1(d) provides that a trial court may permit an amendment to an information at any time before a verdict or finding, if substantial rights of the defendant are not prejudiced. This rule permits the liberal amendment of an information before trial, but Washington's Constitution requires that a defendant be adequately informed of charges he is to face at trial. State v. Pelkey, 109 Wash.2d 484, 487-90, 745 P.2d 854 (1987); State v. Hull, 83 Wash.App. 786, 799-800, 924 P.2d 375 (1996), review denied, 131 Wash.2d 1016, 936 P.2d 416 (1997). We review a trial court's decision to allow the State to amend the charge for an abuse of discretion. State v. Brett, 126 Wash.2d 136, 155, 892 P.2d 29 (1995), cert. denied, 516 U.S. 1121, 116 S.Ct. 931, 133 L.Ed.2d 858 (1996); State v. Ziegler, 138 Wash.App. 804, 808, 158 P.3d 647 (2007). An abuse of discretion occurs when the trial court's ruling is manifestly unreasonable or exercised on untenable grounds. Dixon, 159 Wash.2d at 75-76, 147 P.3d 991 (quoting Rohrich, 149 Wash.2d at 654, 71 P.3d 638).
¶ 29 Here, the State filed a pretrial motion to amend the information. The State did not seek to add or remove any charges; instead, the State sought to amend only the predicate felony offense evidence for five of the unlawful possession of firearm charges. Lamb had knowledge of the indecent liberties disposition that the State sought to use as the predicate offense because the indecent liberties disposition was referenced in the 1991 burglary disposition that Lamb challenged. The State did not seek to charge a different offense but only sought to amend the information pretrial to allege an alternate predicate offense to prove the original charge. Lamb had full knowledge of the charge and the new predicate offense and there is no possible prejudice to Lamb's fair trial rights in allowing a pretrial amendment to the information. The trial court abused its discretion by not permitting the State to amend the charging information because its decision was based on substituting the State's charging discretion with its own subjective belief that the charges created a manifest injustice.

Dismissing of the Charges
¶ 30 Last, the State challenges the trial court's authority to dismiss the unlawful possession of firearm charges with prejudice. Lamb argues that the trial court properly dismissed the charges because the State could not prove the predicate offense element. We agree with the State's analysis.
¶ 31 We review a trial court's decision to dismiss criminal charges for an abuse of discretion. State v. Michielli, 132 Wash.2d 229, 240, 937 P.2d 587 (1997). A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds. Dixon, 159 Wash.2d at 75-76, 147 P.3d 991 (quoting Rohrich, 149 Wash.2d at 654, 71 P.3d 638); Hudson, 150 Wash.App. at 652, 208 P.3d 1236. Dismissal of criminal charges is an extraordinary remedy that should be used only as a last resort. State v. Wilson, 149 Wash.2d 1, 12, 65 P.3d 657 (2003). A trial court may not dismiss charges under CrR 8.3(b) unless the defendant shows by a preponderance of the evidence (1) "`arbitrary action or governmental misconduct'" and (2) "`prejudice affecting the defendant's right to a fair trial.'" Rohrich, 149 Wash.2d at 654, 71 P.3d 638 (quoting Michielli, 132 Wash.2d at 239-40, 937 P.2d 587).
¶ 32 Citing generally to CrR 8.3, Lamb filed a motion to dismiss, claiming that there is insufficient evidence to establish a prima facie case.[14] The trial court granted the motion but did not cite any legal authority it was relying on when it dismissed the charges. The trial court's written reason for *99 dismissing the charges with prejudice was that
[t]here is no evidence that [Lamb] was ever warned, or had any way of knowing, that several years later the law would change in such a way that it would now be impermissible for him to use or possess a firearm. To now allow either of [the] childhood offenses to now serve as the predicate offense for unlawfully possessing a firearm would be manifestly unjust.
CP (No. 40379-0-II) at 11-12. Based on its reasoning, the trial court appears to have relied on CrR 8.3(b) when dismissing the charges. CrR 8.3(b) states that
[t]he court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial.
¶ 33 Here, assuming that it relied on CrR 8.3(b), the trial court's reasons for dismissing the charges exceeded its authority. The trial court dismissed the charges because of a perceived manifest injustice related to Lamb's notice of his revoked firearm possession rights. But CrR 8.3(b) allows for dismissal of charges related to arbitrary actions and/or governmental conduct that prejudices the defendant's right to a fair trial. Perception of a manifest injustice in a previous proceeding does not give the trial court authority to dismiss charges under CrR 8.3(b). Accordingly, the trial court's articulated reason for dismissing the charges is not a valid ground for its decision.
¶ 34 The trial court also erred if it relied on CrR 8.3(c)'s prima facie case grounds to support dismissing the charges with prejudice. The State asserted that the 1987 indecent liberties disposition could serve as the predicate offense for the unlawful firearm possession charges. Although the trial court suggested that it could vacate the 1987 indecent liberties disposition for the same reasons it vacated the 1991 burglary disposition, importantly Lamb never brought any motions challenging the validity of the 1987 indecent liberties guilty plea or asking for the 1987 disposition to be vacated. Thus, the State satisfied the prima facie evidence requirements for the case to proceed to trial. Moreover, under CrR 8.3(c)(4) and Knapstad, the trial court may only dismiss the charges without prejudice. See State v. Vangerpen, 125 Wash.2d 782, 792-93, 888 P.2d 1177 (1995).
¶ 35 Lamb believes that his 1987 indecent liberties disposition cannot serve as a predicate offense for his current charges because the State no longer criminalizes the specific actions that resulted in his disposition. The law does not support his position.
¶ 36 RCW 10.01.040 prevents the amendment or repeal of a criminal statute from affecting all committed offenses and resulting penalties "unless a contrary intention is expressly declared in the amendatory or repealing act." This savings clause requires trial courts to give effect to dispositions according to the statutes in effect on the date of the committed crime unless the repealing act expresses contrary intent. See Rivard v. State, 168 Wash.2d 775, 781, 231 P.3d 186 (2010) (refusing to consider a prior vehicular homicide conviction, a class B felony at the time of the offense, as a class A felony when the legislature did not include retroactive application intent language in the amendatory process when elevating the felony status of the crime).
¶ 37 Lamb pleaded guilty and was convicted of indecent liberties under former RCW 9A.88.100(1)(b). In 1988, when the legislature substantially amended the indecent liberties statute as part of extensive changes to the sex offense criminal statutes, the legislature declined to express an intent contrary to the savings clause and explicitly stated that it did not change or modify "any liability, civil or criminal, which is already in existence on July 1, 1988." Laws of 1988, ch. 145, § 25. Thus, Lamb's 1987 indecent liberties disposition could serve as the predicate offense for the current second degree firearm possession charges. See RCW 9.41.040(2)(a)(i); former RCW 9A.88.100(3).
¶ 38 The trial court's asserted basis for its decision to dismiss the unlawful possession of firearm charges is an untenable ground. In *100 addition, the trial court abused its discretion when it refused to recognize that Lamb's unchallenged 1987 indecent liberties disposition could serve as the predicate offense for the firearm charges. Thus, it abused its discretion when it improperly denied the State's pretrial motion to amend the information and exceeded its legal authority when it improperly dismissed the firearm charges.
¶ 39 We reverse the trial court's decisions (1) allowing Lamb to withdraw his 1991 guilty plea, (2) vacating Lamb's 1991 burglary disposition, (3) denying the State's motion to amend the information, and (4) dismissing the unlawful possession of firearm charges. We remand to the trial court for proceedings consistent with this opinion.
We concur: VAN DEREN, J., and WORSWICK, A.C.J.
NOTES
[1] The State cites former RCW 9A.44.100 (1986) as the applicable version of the statute. But the legislature's 1986 amendments to the statute did not go into effect until June 11, 1986. Laws of 1986, at ii. Because Lamb's date of crime was in April 1986, the 1975 version of the indecent liberties statute applies. Former RCW 9A.88.100 states in relevant part, "(1) A person is guilty of indecent liberties when he knowingly causes another person who is not his spouse to have sexual contact with him or another: ... (b) When the other person is less than fourteen years of age." This crime was a class B felony. Former RCW 9A.88.100(3).
[2] RCW 9.41.040 states in relevant part,

(2)(a) A person, whether an adult or juvenile, is guilty of the crime of unlawful possession of a firearm in the second degree, if the person does not qualify under subsection (1) of this section for the crime of unlawful possession of a firearm in the first degree and the person owns, has in his or her possession, or has in his or her control any firearm:
(i) After having previously been convicted or found not guilty by reason of insanity in this state or elsewhere of any felony not specifically listed as prohibiting firearm possession under subsection (1) of this section.
[3] The State filed a motion for reconsideration of the trial court's decision concerning Lamb's guilty plea withdrawal. The State highlighted evidence of Lamb's 1987 indecent liberties disposition and multiple misdemeanor convictions between 1992 and 2002, which it argued contradicted the trial court's belief that Lamb could have restored his firearm possession rights. The State also challenged the timeliness of Lamb's withdrawal request, claiming that CrR. 7.8 and RCW 10.73.090 precluded this collateral attack of the guilty plea and disposition more than one year after their entry. The trial court denied the State's motion for reconsideration after refusing to consider Lamb's criminal history, believing that the State should have presented it at an earlier proceeding. The trial court did not address the State's timeliness argument.
[4] The State's motion to amend is not in the record on review, but it is referenced in a subsequent trial court hearing.
[5] The status of the three firearm theft and manufacturing marijuana charges is unclear in the record. It appears that the State may have bifurcated the charges in the information and proceeded to trial on the theft and marijuana charges.
[6] The State also originally asserted that RCW 10.73.090 time barred Lamb's motion, but the State abandoned this argument in its reply brief. The State agreed with Lamb that it could not prove he was notified of the collateral attack time limitations, as required by RCW 10.73.110.
[7] The distinctions in our standard of review cannot be overstated. Under an abuse of discretion standard, we defer to the decision of the trial court and will reverse only when the trial court's decision rests on untenable grounds. But we review de novo the trial court's choice of law, its interpretation, and its application to the facts of the case. Whelchel, 97 Wash.App. at 817, 988 P.2d 20. Thus, to determine whether the trial court committed an error of law, which is included in the abuse of discretion standard, we review the alleged error of law itself de novo.
[8] Lamb also cited JuCR 1.4 in his motion. JuCR 1.4(b) provides that "[t]he Superior Court Criminal Rules shall apply in juvenile offense proceedings when not inconsistent with these rules and applicable statutes." JuCR 7.6 requires the taking of a juvenile offender's guilty plea in accord with CrR 4.2. Accordingly, we need only distinguish between CrR 4.2 and CrR 7.8 in our analysis.
[9] We note that under CrR 7.8(b), a motion for relief from judgment must be filed within a year or a reasonable time, depending on the grounds asserted for relief, of the entry of a final judgment or order. See RCW 10.73.090 and .100. In this opinion, we do not evaluate the timeliness of Lamb's motion under CrR 7.8.
[10] The trial court and parties failed to observe that Lamb's challenge to his 1991 disposition was a constitutional challenge to its current use, and that the State had the burden to prove its validity for that purpose beyond a reasonable doubt before the prior conviction could be admissible evidence in the current prosecution. See, e.g., State v. Summers, 120 Wash.2d 801, 810, 846 P.2d 490 (1993); State v. Chervenell, 99 Wash.2d 309, 312, 662 P.2d 836 (1983); State v. Holsworth, 93 Wash.2d 148, 159, 607 P.2d 845 (1980).
[11] We note that the trial court also failed to transfer Lamb's motion to withdraw and vacate his 1991 plea to the appellate court as CrR 7.8(c)(2) requires. Under CrR 7.8(c)(2), the trial court

shall transfer a motion filed by a defendant to the Court of Appeals for consideration as a personal restraint petition [ (PRP) ] unless the [trial] court determines that the motion is not barred by RCW 10.73.090 and either (i) the defendant has made a substantial showing that he or she is entitled to relief or (ii) resolution of the motion will require a factual hearing.
(Emphasis added.) A trial court may only rule on the merits of a CrR 7.8 motion if the motion is timely filed and either of the two prerequisites is met; otherwise the trial court must transfer timely motions to this court. State v. Smith, 144 Wash.App. 860, 863, 184 P.3d 666 (2008).
Here, there is nothing in the record indicating that the trial court addressed its authority to consider Lamb's motion. Absent a determination that it had authority to consider the CrR 7.8 motion's merits, the trial court was required to transfer Lamb's motion, assuming it was timely filed, to this court for our consideration as a PRP instead of addressing the motion's merits. Smith, 144 Wash.App. at 863, 184 P.3d 666.
[12] Because neither the 1991 juvenile court nor the State had a duty, before 1994, to inform Lamb of his revoked firearm rights, we do not need to fully address the parties' arguments about whether the revocation of firearm possession rights is a collateral or direct consequence of a guilty plea and resulting sentence. But we note that several Washington courts have held or stated that the loss of firearm rights is a collateral consequence of a guilty plea. See, e.g., State v. Schmidt, 143 Wash.2d 658, 676, 23 P.3d 462 (2001); In re Pers. Restraint of Ness, 70 Wash. App. 817, 823-24, 855 P.2d 1191 (1993), review denied, 123 Wash.2d 1009, 869 P.2d 1085 (1994). We are not persuaded by Lamb's arguments that Schmidt and Ness do not apply.

Our reversal of the trial court's order vacating the 1991 disposition for an error of law makes it unnecessary for us to evaluate any error in the trial court's decision that Lamb could have restored his firearm possession rights. But we note that, based on our review of the record, the State may not have had adequate notice and an ability to respond to the trial court's consideration of Lamb's ability to restore his firearm rights because this point was mentioned for the first time during the trial court's oral ruling. Moreover, we note that Lamb's indecent liberties adjudication is a sex offense. Under former RCW 9.41.040(4) (2009), "[I]f a person is prohibited from possession of a firearm ... and has not previously been convicted or found not guilty by reason of insanity of a sex offense prohibiting firearm ownership ... the individual may petition a court of record to have his or her right to possess a firearm restored." (Emphasis added.)
[13] We do have concerns with the State's decision to prosecute without first notifying Lamb that it was unlawful for him to possess firearms. Lamb purchased a firearm in the mid-1990s after apparently passing a background check. The State's express authorization to purchase a firearm might collaterally estop the State from charging Lamb with unlawful possession of a firearmat least insofar as the State allowed the purchase of the firearm in question.

At oral argument, the State suggested that Schmidt provided guidance on this issue. But in Schmidt, the question resolved by the court concerned whether statutory amendments to the types of firearms covered by the unlawful possession statute violated ex post facto principles. 143 Wash.2d at 661, 23 P.3d 462. Although our Supreme Court remanded for the reinstatement of firearm charges against a defendant who had obtained concealed weapons permits, the court never addressed whether the State's issuing of the permits might collaterally estop the State from bringing the charges for possession of the licensed firearms. Schmidt, 143 Wash.2d at 665, 677-78, 23 P.3d 462. Thus, Schmidt does not resolve these concerns. Any such prohibition would not, of course, apply to firearms Lamb allegedly stole.
[14] Lamb did not cite to State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986), in his motion and cited only generally to CrR 8.3.