IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31114-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JOEL GONZALEZ, | ) | |
| | ) | |
| Appellant. | ) | |

CULP, J.* — Joel Gonzalez appeals his three juvenile adjudications for first degree rape of a child, arguing the trial judge's comments regarding the behaviors of child victims of sexual abuse constituted improper judicial notice of facts in violation of ER 201 as well as testimony from the judge contrary to ER 605. He also contends the trial court erred in excluding a defense witness and that cumulative error deprived him of a fair trial.

---

*  Judge Christopher Culp is serving as judge pro tempore of the Court of Appeals pursuant to RCW 2.06.150.

Finding no error, we affirm.

## FACTS

Joel Gonzalez (D.O.B. 8/27/98) was 13 years old when the State charged him with three counts of first degree rape involving his younger male cousin, I.G. (D.O.B. 3/29/03).[1] The evidence showed that Joel and his cousins spent a significant amount of time together and that Joel anally raped I.G. at least three times when Joel and I.G. spent the night together at their homes or their grandmother's house.

Before trial, the State moved to exclude defense photographs and videos of Joel interacting with I.G. and D.G. during family gatherings on the basis that they were irrelevant. The State argued, "[t]he photos basically show children in the presence of other people, and we know that children who are abused do not necessarily behave in a manner that is obvious to us around their abusers. They don't necessarily cower in the corner." Report of Proceedings (RP) at 9. The defense responded that the photographs and videos were necessary to impeach the testimony of witnesses concerning I.G.'s and D.G.'s fear of Joel and to give the court the entire picture of the relationship between the cousins.

---

[1] After trial, the juvenile court dismissed a charge of attempted first degree rape of

The court granted the State's motion, concluding that the photographs and video were irrelevant to whether the alleged rapes occurred. The court explained that children do not necessarily know it is wrong when they are raped or molested, and the fact that I.G. and D.G. were comfortable around Joel at family gatherings had no bearing on whether the rapes occurred.

At trial, I.G., who was nine years old at the time of trial, testified that Joel put his "private part" in I.G.'s anus on more than five or six occasions. RP at 48. He testified that this happened when Joel spent the night at his house or at their grandmother's house. I.G.'s sister, D.G., who was seven years old at the time of trial, testified that she saw Joel put his "private part" in I.G.'s "private part." RP at 146.

Karla Arroyo, I.G. and D.G.'s mother, testified that in June 2011, Joel spent the night with I.G. and D.G. at her house. Ms. Arroyo testified that she got up in the night to go to the bathroom and checked on Joel and I.G. She saw that they "both had their boxers down" and "Joel was spooning [I.G.]." RP at 163. Ms. Arroyo woke Joel, who denied that anything inappropriate happened.

Part of the defense theory was that the rapes did not occur because I.G. did not show visible signs of fear in the presence of Joel. Maria Saldivar Guiterres, I.G.'s great

a child against a female cousin, D.G. (D.O.B. 11/17/04).

3

aunt, testified that she observed Joel and I.G. interact on numerous occasions and never saw I.G. exhibit any fear or unhappiness around Joel.

Xochitl Arroyo, Joel's mother, testified that Joel and I.G. got along together and that she never observed I.G. exhibit any fear around Joel. Josephina Arroyo, Joel's and I.G.'s grandmother, also testified that she never saw I.G. express any fear or discomfort around Joel. She stated the boys are "wonderful together" and that "[I.G.] is happy to be with Joel." RP at 362.

Joel testified that he never attempted to have anal intercourse with I.G. or touch him in a sexually inappropriate manner.

On the last day of trial, Joel sought to introduce the expert testimony of Susan Huett, his counselor. Defense counsel explained that Ms. Huett had worked with 200 to 250 child sexual abuse victims and that she would testify that virtually all juvenile victims of sexual abuse showed fear in the presence of the perpetrator.

The court did not permit Ms. Huett to testify, finding the proposed testimony was not sufficiently probative. It stated, "it's absolutely undisputed in the case that [I.G.] dearly loves his cousin, Joel. He loves to be around him . . . . That is undisputed in the record. I don't need an expert to tell me that." RP at 383.

The juvenile court adjudicated Joel guilty of three counts of first degree child rape. Joel appeals the adjudications.

## ANALYSIS

*Judicial Notice/Testimony.* We first address whether the trial court became a witness or improperly took judicial notice of certain facts during the bench trial. Joel argues that the trial judge's comments regarding the behaviors of child victims of sexual abuse constituted both improper judicial notice of facts in violation of ER 201 and testimony from the judge contrary to ER 605.

Initially, we note that Joel did not object to the trial court's statements on grounds of judicial notice and the trial court did not characterize its ruling as based on judicial notice. We review an issue raised for the first time on appeal only if it involves a "manifest error affecting a constitutional right." RAP 2.5(a)(3). To be manifest, Joel must show that the asserted error had practical and identifiable consequences at trial. *State v. Gordon*, 172 Wn.2d 671, 676, 260 P.3d 884 (2011) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)). Joel does not identify an error of constitutional magnitude, provide a supporting constitutional theory, or show how the alleged error actually affected his rights at trial. Moreover, evidentiary issues are not errors of constitutional magnitude. *State v. Powell*, 166 Wn.2d 73, 84, 206 P.3d 321 (2009). The

issue is not properly before us.

However, even if we address Joel's arguments, they fail. Joel specifically points to

the following comments as evidence of improper judicial notice:

> Little kids don't know it's wrong when they're raped and
> molested. . . . [T]hey don't know when things are morally incorrect . . . .
> And so that they weren't afraid of or didn't mind being around or
> absolutely enjoyed Joel's company after either, after the alleged incidents
> . . . doesn't really help me decide the case at all.

RP at 27.

> [G]iven the tender years of the victim, alleged victims in the case, it doesn't
> really prove anything one way or another to me that they are comfortable
> around him in family settings, especially playing video games.

RP at 29.

> [C]hildren rarely know or perceive or comprehend that anything is bad or
> wrong happening—they may not like it, they may find it uncomfortable, but
> from the moral code . . . they usually don't have any hint or clue that there's
> anything wrong going on.
> . . . [H]ow can comfortability around the accused have any bearing
> on whether or not the allegations have occurred in the first place.

RP at 31-32.

> [I]t's absolutely undisputed in the case that [I.G.] dearly loves his cousin,
> Joel. He loves to be around him, he worships the ground he walks on, he
> looks at him as the older brother he does not have, but he testifies there's
> something that goes on after dark in closed doors, in private, that he doesn't
> like at all.

RP at 383.

6

> [I]f something has become so commonplace that it happens every time you spend the night with somebody, you may not like it, it may not feel good, but who says you're going to be afraid of it?

RP at 449.

Citing *Elston v. McGlauflin*, 79 Wash. 355, 140 P. 396 (1914), Joel first argues on appeal that the judge inserted himself as a witness when he stated his theory that child victims of sexual abuse rarely comprehend that anything bad or wrong is happening. He argues the trial judge's statements were "based upon knowledge obtained independent of the proceedings before the court," were integral to his judgment and, therefore, the judgment must be reversed. Appellant's Br. at 28.

Under ER 605, "[t]he judge presiding at the trial may not testify in that trial as a witness." In *Elston*, during a trial in which negligent construction of an apartment building was at issue, the judge visited the site of the apartment building without the knowledge of the parties or counsel. *Elston*, 79 Wash. at 359. On appeal, the court held that the trial court's independent investigation denied the parties a fair trial because "[t]he court unwittingly became a witness in the case, and in some degree, at least, based his judgment upon his own independent experience and preconceived opinion." *Id.* at 360.

7

*Elston* is inapposite. The trial judge in this case did not conduct an independent investigation or make his decision based upon independent experience. The court's findings reflect that it based its decision upon the testimony of I.G., D.G., and their mother. Moreover, evaluated in context, the court's statements about the behavior of child victims of abuse were not "testimony" under ER 605; they were merely part of its explanations for evidentiary rulings regarding the admissibility of photographs of Joel with his cousins and the propriety of allowing a defense witness to testify.

Joel's judicial notice argument likewise fails. He contends, "[w]hether I.G. reacted to the alleged hundreds of rapes in a manner consistent with the behavior of most child victims of sexual abuse was an adjudicative fact that was not appropriate for judicial notice." Appellant's Br. at 22-23. "Judicial notice" means "[a] court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact." BLACK'S LAW DICTIONARY 923 (9th ed. 2009). ER 201(b) governs the scope and process for taking judicial notice of facts that are "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." "A party is entitled upon timely request to an opportunity to be heard as to the propriety of taking judicial notice and the tenor of the matter noticed." ER 201(e).

8

Contrary to Joel's argument, the trial court did not take judicial notice of disputed facts. As just explained, the court's statements were part of its oral explanation for its evidentiary decisions and did not provide the basis for its findings of fact or conclusions of law. The court simply explained that evidence that I.G. and D.G. were comfortable around Joel in public had no bearing on whether the rapes occurred. In this context, we conclude the court did not take judicial notice of disputed facts.

The trial court did not testify or take judicial notice of facts in violation of ER 605 or ER 201.

*Exclusion of Expert Witness.* Citing *State v. Hutchinson*, 135 Wn.2d 863, 959 P.2d 1061 (1998), Joel contends the trial court abused its discretion in excluding the testimony of Ms. Huett. He contends the court's exclusion of Ms. Huett's testimony both prevented the defense from rebutting the trial court's opinion regarding the behavior of child sex abuse victims and "severely limited the defense's ability to call the credibility of the State's witnesses into question in a case which depended entirely upon the testimony of lay witnesses." Appellant's Br. at 31. He contends the court should have allowed the State time to interview Ms. Huett and locate a rebuttal witness.

We review a trial court's decision to admit expert testimony for an abuse of discretion. *State v. Willis*, 151 Wn.2d 255, 262, 87 P.3d 1164 (2004). A trial court

9

abuses its discretion when its decision is manifestly unreasonable or exercised on untenable grounds. *State v. Lamb*, 163 Wn. App. 614, 631, 262 P.3d 89 (2011), *aff'd in part, rev'd in part*, 175 Wn.2d 121, 285 P.3d 27 (2012). Where reasonable minds could take differing views, the trial court has not abused its discretion. *State v. Demery*, 144 Wn.2d 753, 758, 30 P.3d 1278 (2001).

Initially, we note that Joel did not argue at trial that the *Hutchinson* factors warranted admission of Ms. Huett's testimony; instead, defense counsel sought to admit the testimony as relevant for impeachment purposes. No error can be assigned to an evidentiary ruling that the court did not address. *See State v. Perez-Cervantes*, 141 Wn.2d 468, 482, 6 P.3d 1160 (2000). Thus, he waives the argument on appeal.

However, even if we were to consider the issue, *Hutchinson* is inapplicable here. *Hutchinson* involved the propriety of excluding evidence as a sanction for a discovery violation under CrR 4.7. In deciding whether to impose sanctions, the court identified four factors a trial court must consider before excluding testimony: (1) the effectiveness of less severe sanctions, (2) the impact on the evidence at trial, (3) the extent to which the opposing party will be surprised or prejudiced by the evidence, and (4) whether the violation was willful or in bad faith. *Hutchinson*, 135 Wn.2d at 882-83. Here, the trial court did not exclude Ms. Huett's testimony as a sanction for a discovery violation; the

10

sole basis for exclusion was the court's determination that the evidence was irrelevant. *Hutchinson* does not apply.

Next, Joel argues that Ms. Huett's testimony was relevant to rebut the court's theory that child victims exhibit no fear around their abusers. He argues, "[e]vidence of the behavior of child victims of sexual abuse is relevant to whether or not the abuse occurred and where necessary to rebut contrary theories explaining the behavior of the alleged victim." Appellant's Br. at 33.

Only relevant evidence is admissible. Under ER 401, evidence is relevant if it makes "the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Joel argues the evidence was relevant under ER 702 because Ms. Huett's expert testimony would have helped the court "understand whether or not the accuser's behavior is consistent with that of victims of sexual assault." Appellant's Br. at 34.

The court was not asked to address whether Ms. Huett's testimony satisfied ER 702; it excluded the evidence as irrelevant under ER 401. It did not abuse its broad discretion in doing so. Ms. Huett would have testified that in her experience, child victims of sexual abuse typically show fear around their abusers. This evidence was of marginal, if any, relevance as to whether the rapes occurred in this case. Admittedly,

numerous witnesses testified that I.G. and D.G. did not show fear when they were around Joel in public during family gatherings. However, the evidence established that the sexual abuse occurred in private; thus, as the court correctly pointed out, the behavior of I.G. and D.G. in public was of little relevance in determining whether the rapes occurred. Accordingly, Ms. Huett's proposed testimony would not have been particularly helpful to the court. The trial court had a tenable basis for excluding the testimony.

The trial court did not abuse its discretion by excluding Ms. Huett's proposed testimony.

*Cumulative Error.* Joel argues that cumulative error deprived him of a fair trial. Under the cumulative error doctrine, we may reverse a defendant's conviction when the combined effect of the trial errors effectively denies the defendant's right to a fair trial, even if each error alone would be harmless. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). But cumulative error does not apply where there are no errors or the errors are few and have little or no effect on the trial's outcome. *Id.* Because there are no errors here, cumulative error does not apply.

No. 31114-7-III
*State v. Gonzalez*

We affirm.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Culp, J.P.T.

WE CONCUR:

_____
Brown, A.C.J.

_____
Korsmo, J.

13