[No. 11366-6-I.   Division One.   October 3, 1983.]

THE STATE OF WASHINGTON, *Respondent,* v. ROGER LEE THOMPSON, *Appellant.*

*Michael Filipovic* and *Ronald Kessler* of *Seattle–King County Public Defender Association* (*Edward W. Bassett,* of counsel), for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Robert Ryan, Deputy,* for respondent.

RINGOLD, J.—The defendant, Roger Lee Thompson, appeals the judgment and sentence entered on his conviction of one count of escape in the first degree (RCW 9A.76-.110). Because the guilty plea used to prove the underlying conviction in this escape prosecution was constitutionally invalid under *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983), we reverse the judgment and sentence and remand for sentencing for second degree escape.

On February 16, 1977, Thompson pleaded guilty to second degree manslaughter while armed with a deadly weapon and firearm. He was sentenced to a mandatory minimum term of 5 years in prison. In July 1979 Thompson was transferred from the State Reformatory at Monroe to the Washington Center Work Training Program, a minimum security work release facility. Thompson was permitted to leave the facility at certain times of day to go to a job assignment and was required to return to the facility at designated times.

On September 30, 1979, Thompson returned to Washington Center a few minutes before midnight, the time he was due back. A Washington Center staff member noticed that Thompson appeared to have consumed alcohol, in violation of the rules and regulations of the work release program. A urine specimen was taken for testing and Thompson was ordered to return to his room. Thompson left the facility without permission shortly after midnight. He was not returned to custody until December 2, 1981, at which time a warrant for escape was outstanding. Thompson was charged with escape in the first degree, pursuant to RCW 9A.76.110: "A person is guilty of escape in the first degree if, *being detained pursuant to a conviction of a felony . . .*, he escapes from custody or a detention facility." (Italics ours.)

Prior to trial, a hearing was held to determine the validity of Thompson's 1977 guilty plea. The State introduced the record of the plea proceeding as well as evidence consisting of a 1969 judgment and sentence entered on a conviction for burglary in the second degree. The trial court reviewed this evidence and concluded that Thompson had full knowledge of the consequences of his plea, understood the nature of the offense, had been advised of and understood his constitutional rights, and had knowingly, intelligently, and voluntarily waived those rights before entering his 1977 plea. The trial court ruled that the 1977 plea of guilty was constitutionally valid beyond a reasonable doubt, and the jury was instructed accordingly. Following trial, the jury returned a verdict of guilty of escape in the first degree. Thompson appeals.

### Propriety of Escape Charge
### Under RCW 9A.76

Thompson first contends that he was improperly charged with escape under RCW 9A.76. He cites *State v. Danforth*, 97 Wn.2d 255, 643 P.2d 882 (1982) for the proposition that he could only be charged under RCW 72.65.070, a specific statute governing the failure of a work release prisoner to

return to a work release facility. Although the court in *Danforth* stated that its holding was prospective only, Thompson argues that he is entitled to the benefits of that decision because his case was pending on appeal when *Danforth* was decided.

■ *State v. Danforth, supra,* is not applicable here. RCW 72.65.070 provides as follows:

> Any prisoner approved for placement under a work release plan who wilfully fails to return to the designated place of confinement at the time specified shall be deemed an escapee and fugitive from justice, and upon conviction shall be guilty of a felony and sentenced in accordance with the terms of chapter 9.31 RCW. The provisions of this section shall be incorporated in every work release plan adopted by the department.[1]

Thompson did not "[fail] to return to the designated place of confinement at the time specified"; he returned to his work release facility at the proper time, but then left again without permission. The facts of his offense thus do not fall under RCW 72.65.070. Thompson was properly charged with escape under RCW 9A.76.

## IDENTIFICATION EVIDENCE

Thompson next challenges the admissibility of certain public records to prove identity. He argues that RCW 5.44.040[2] provides the exclusive method of authenticating public records. The State contends that the records were properly introduced under the Uniform Business Records as Evidence Act, RCW 5.45.020.[3] We hold that the records

---

[1] RCW 9.31 (excluding RCW 9.31.090) was repealed by Laws of 1975, 1st Ex. Sess., ch. 260, § 9A.92.010.

[2] RCW 5.44.040 reads:

"Copies of all records and documents on record or on file in the offices of the various departments of the United States and of this state, when duly certified by the respective officers having by law the custody thereof, under their respective seals where such officers have official seals, shall be admitted in evidence in the courts of this state."

[3] RCW 5.45.020 provides:

"Business records as evidence. A record of an act, condition or event, shall in

were properly authenticated.

■ ER 901(a) provides "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." RCW 5.44.040, cited by Thompson, is not the sole method for authenticating public records, but provides a means of self–authentication, whereby certified copies of public records may be admitted into evidence without the necessity of authentication by live testimony. *See* ER 902(d). With a live witness available for cross examination, public documents need not be certified to be properly authenticated. In *State v. Stephens,* 83 Wn.2d 485, 490, 519 P.2d 249 (1974), the court stated:

> Bare records are not subject to cross–examination and the requirement for the accompanying certificate is therefore proper to provide a greater degree of caution in assuring the authenticity of such official records. In the case of the appearance of the asserted custodian of the records in person, his testimony that he is the custodian is subject to the test of cross–examination.

Once the custodian of records personally identified the exhibit as an accurate copy of official records in his possession, the test of authentication was met.

### USE OF PRIOR GUILTY PLEA

Finally, Thompson contends that his 1977 guilty plea to manslaughter was constitutionally deficient and that the State did not sustain the element of RCW 9A.76.110 which requires proof that the escapee was "being detained pursuant to a conviction of a felony".

■ In *State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983), the Supreme Court held that in order to prove the validity of a guilty plea for use in subsequent proceedings,

---

so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

the State must establish beyond a reasonable doubt that the defendant, prior to entering the plea of guilty, was aware of his Fifth Amendment privilege against self-incrimination. Absent such awareness, the defendant cannot properly evaluate the State's case in deciding whether to plead guilty or not. *Chervenell,* at 315; *see In re Keene,* 95 Wn.2d 203, 213–15, 622 P.2d 360 (1980) (Utter, C.J., concurring and dissenting). *Chervenell* holds that a defendant's awareness of this right may be shown in a number of ways, including explicit advice by the trial court at the time of entering the plea, the exercise of that right by the defendant in prior proceedings, or by other evidence showing that the defendant was aware of his privilege against self-incrimination. The attorney who represented the defendant at the plea proceeding may testify as to whether she advised the defendant of his right to remain silent. *Chervenell,* at 315–16.

In the case at bench, the trial court did not have sufficient evidence to conclude beyond a reasonable doubt that Thompson was aware of his right against self-incrimination. The record of the 1977 plea proceeding indicates only that Thompson's counsel discussed the rights as specified on the Statement on Plea of Guilty form, which at that time did not include the right at issue. Nor did the 1969 burglary conviction[4] provide the trial court with a basis to conclude that Thompson had prior knowledge of his right against self-incrimination. The State made no effort to prove the circumstances surrounding the 1969 plea.

The State argues that the holding in *Chervenell,* a habitual criminal case, should not be applied to a prosecution for first degree escape. In *State v. Swindell,* 93 Wn.2d 192, 607 P.2d 852 (1980), the Supreme Court applied the holding of *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980), a

---

[4]Because the 1969 burglary conviction was irrelevant to the issue of Thompson's knowledge of his rights, it should not have been admitted into evidence. We need not decide whether the 1969 plea was "extrinsic" evidence under the rule of *Wood v. Morris,* 87 Wn.2d 501, 554 P.2d 1032 (1976).

habitual criminal case, to a prosecution under the firearms statute (RCW 9.41.040) and held that a defendant could assert the invalidity of a prior guilty plea in a prosecution under that statute as well as in habitual criminal proceedings. In *State v. Brown,* 29 Wn. App. 1, 627 P.2d 142 (1981), this court applied *Swindell* and *Holsworth* to the escape statute in question here and held that the State must establish the constitutional validity of the underlying conviction beyond a reasonable doubt in order to prove that the accused is a convicted felon, an element of first degree escape. Because the State failed to prove Thompson's 1977 manslaughter conviction valid beyond a reasonable doubt, there was insufficient evidence to support a conviction of first degree escape.

█ We need not, however, reverse and dismiss. RCW 9A.76.120 provides, in part: "Escape in the second degree. (1) A person is guilty of escape in the second degree if: (a) He escapes from a detention facility; . . ." "Unlike the charge of first degree escape, the legislature has not expressly made a prior conviction an element of the offenses of second and third degree escape under RCW 9A.76-.120 and 9A.76.130." *State v. Brown, supra* at 6. All of the elements required to convict Thompson of second degree escape were necessarily proven to the jury, which returned a verdict of guilty of escape in the first degree. *See, e.g., State v. Papadopoulos,* 34 Wn. App. 397, 662 P.2d 59 (1983).

The judgment and sentence for first degree escape are reversed and the cause remanded for entry of judgment and sentence for second degree escape pursuant to RCW 9A.76-.120.

WILLIAMS, J., concurs.

SCHOLFIELD, J. (dissenting)—I do not agree that the reasoning originally adopted in *State v. Holsworth,* 93 Wn.2d 148, 607 P.2d 845 (1980); *accord, State v. Chervenell,* 99 Wn.2d 309, 662 P.2d 836 (1983), and extended beyond

habitual criminal prosecutions in *State v. Swindell,* 93 Wn.2d 192, 607 P.2d 852 (1980) and *State v. Brown,* 29 Wn. App. 1, 627 P.2d 142 (1981), is applicable to prosecutions for first degree escape. I would affirm Thompson's conviction.

*Chervenell* and *Holsworth* involve habitual criminal proceedings under RCW 9.92.090. In habitual criminal prosecutions, the prior convictions relied upon by the State to prove habitual criminal status are the gravamen of the case. The purpose of the habitual criminal statute is to enhance sentencing of those guilty of repetitive criminal offenses. Because the statute has no purpose to serve where a prior conviction relied upon is not valid, it is reasonable and consistent with the statutory purpose to require the State to prove the validity of challenged prior convictions.

*State v. Swindell, supra,* can also be distinguished. This court recently held that the State was not required to prove the constitutional validity of the underlying conviction to support a charge of felon in possession of a firearm under RCW 9.41.040. *State v. Gore,* 35 Wn. App. 62, 665 P.2d 428 (1983). *Gore* relies upon the reasoning of *Lewis v. United States,* 445 U.S. 55, 63 L. Ed. 2d 198, 100 S. Ct. 915 (1980), in which the Supreme Court held that a prior conviction which was clearly subject to collateral attack on constitutional grounds could nevertheless be used as a prior conviction necessary to a prosecution for possession of a firearm in violation of provisions of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. app. § 1202(a)(1) (1976). This reasoning supports, by analogy, my conclusion that the constitutional invalidity of the underlying conviction is immaterial in a prosecution for first degree escape.

> An examination of § 1202(a)(1) reveals that its proscription is directed unambiguously at any person who "has been convicted by a court of the United States or of a State . . . of a felony." No modifier is present, and nothing suggests any restriction on the scope of the term "convicted." "Nothing on the face of the statute suggests a congressional intent to limit its coverage to persons [whose convictions are not subject to collateral attack]."

*United States* v. *Culbert,* 435 U. S. 371, 373[, 55 L. Ed. 2d 349, 98 S. Ct. 1112, 1113] (1978); see *United States* v. *Naftalin,* 441 U. S. 768, 772[, 60 L. Ed. 2d 624, 99 S. Ct. 2077, 2081] (1979). The statutory language is sweeping, and its plain meaning is that the fact of a felony conviction imposes a firearm disability until the conviction is vacated or the felon is relieved of his disability by some affirmative action, such as a qualifying pardon or a consent from the Secretary of the Treasury.

(Footnote omitted.) *Lewis v. United States, supra* at 60–61.

In *State v. Brown, supra,* this court concluded that *Holsworth* and *Swindell* required a holding in a first degree escape case that if the underlying conviction is challenged, the State must prove its validity beyond a reasonable doubt. *Brown,* however, follows *Holsworth* and *Swindell* without discussion of the basic difference between habitual criminal statutes and felon–in–possession statutes.

The crime of escape in the first degree is clearly distinguishable in its nature and purpose from habitual criminal proceedings. The gravamen of the crime of escape is a defendant's defiance of lawful custodial authority and deliberate violation of a judgment directing his or her confinement. The orderly and rational administration of the criminal justice system requires that the judgment be treated as a valid conviction until a court with jurisdiction rules otherwise.

The escape statute, RCW 9A.76.110, requires only that the escape occur while defendant is being detained "pursuant to a conviction of a felony". Thompson was being detained "pursuant to a conviction of a felony" whether or not the conviction is subject to attack. The language of the statute contains no suggestion of a legislative intent that the conviction could not be used in a prosecution for first degree escape if it was vulnerable to collateral attack. Because of the clear distinction between the habitual criminal statute and the statute defining escape in the first degree, there is no basis for holding that *Chervenell* and *Holsworth* require reversal of Thompson's conviction of

escape in the first degree.

For the foregoing reasons, I respectfully dissent and would affirm Thompson's conviction for first degree escape.

Reconsideration denied November 1, 1983.