IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39773-4-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| CORY BLAKE BENSON, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Cory Benson appeals his convictions for second

degree assault, unlawful display of a weapon, and misdemeanor harassment. We affirm

his convictions because the complained of errors were harmless, yet we remand for the

trial court to correct a scrivener's error, and to strike the DNA collection fee and victim

penalty assessment.

FACTS

In June 2021, Cory Benson returned to the residential campground in Cle Elum

where he rented a lot. Visiting near the gate of the campground were Nick Condon and

Dean Zurn, both of whom served on the campground's board of directors. Benson had an

acrimonious history with the board, owing to the poor condition of his lot and to his habit

of storing private property in the campground's community areas. As Benson passed Condon and Zurn on his way into the campground, he raised his middle finger at the two men. Condon and Zurn followed Benson to his lot, where they confronted him about parking his car in a day-use area. Benson noticed that both Condon and Zurn had guns in their waistbands, so he grabbed his gun as he exited his car.

The altercation escalated. Although neither Condon nor Zurn reached for their guns, photographs from the scene show Benson arguing with his gun in his hand. Zurn called 911 and reported that Benson had pointed his gun at Zurn and Condon, and threatened to kill them and their families.

In a recorded interview, however, Zurn said only that Benson had pointed his gun at Condon. Zurn did not retract his initial report that Benson had pointed his gun at *both* him and Condon and threatened to kill them and their families. Instead, Zurn in the interview merely reiterated a portion of his initial assertion. At a separate point in the interview, Zurn agreed with the interviewer's statement that Benson had pointed his gun at "[both of] you guys." Rep. of Proc. (May 4, 2023 & June 12, 2023) (RP) at 53.

The State charged Benson with (1) two counts of first degree assault, (2) two counts of unlawful display of a weapon, and (3) two counts of felony harassment. Benson waived his right to a jury trial.

2

At trial, Zurn's testimony reiterated the report he had made to 911 on the date of the incident. Specifically, Zurn testified that Benson had pointed his firearm at Condon and Zurn and threatened to kill both men. To impeach Zurn, defense counsel presented him with the recorded interview he gave to law enforcement. Zurn acknowledged that his recorded statement did not reference Benson pointing his firearm at Zurn, nor did it reference Benson threatening to kill Zurn.

As rehabilitation, the State elicited testimony from responding Officer Jennifer Rogers, who claimed to have heard from 911 dispatch that a caller—presumably Zurn—had reported that a man—presumably Benson—had threatened to shoot him. Benson objected to Officer Rogers' testimony on hearsay grounds. The court allowed the testimony for rebuttal purposes without determining whether the testimony fell under a hearsay exception.

As further rehabilitation, the State offered a 911 call log indicating that Zurn had indeed told dispatch that a man had pointed his gun at him and threatened to kill him. Benson objected to the call log as irrelevant and as hearsay, but then conceded the log's admissibility as a prior consistent statement. The trial court admitted the call log.

The trial court convicted Benson of one count of second degree assault[1] and one count of unlawful display of a weapon (having merged the two unlawful display counts). The court further convicted Benson of misdemeanor harassment, although the court's judgment and sentence erroneously characterized that conviction as a felony. Moreover, the court, despite finding Benson indigent, imposed a $100 DNA collection fee and $500 victim penalty assessment (VPA).

Benson timely appeals.

## ANALYSIS

### INEFFECTIVE ASSISTANCE OF COUNSEL

Benson argues his counsel was deficient by conceding that the 911 call log was admissible as a prior consistent statement. Benson further argues his counsel should have objected to Officer Rogers' testimony on relevancy grounds. As explained below, the errors complained of were harmless.

*Standard of review*

Ineffective assistance of counsel is a constitutional claim this court reviews de novo. *State v. Yarbrough*, 151 Wn. App. 66, 89, 210 P.3d 1029 (2009).

---

[1] In its oral ruling, the trial court concluded that Benson had pointed his gun at Zurn and threatened to shoot him, but also concluded that Benson had not truly intended to kill Zurn or cause him great bodily injury. For this reason, the trial court acquitted Benson of both counts of first degree assault, but convicted him of one count of second degree assault.

4

*Ineffective assistance*

A party alleging ineffective assistance of counsel will prevail on that claim only where (1) their counsel's representation was deficient, and (2) this deficiency prejudiced the party. *Id.*

i. *Deficient representation: call log*

Benson argues his counsel erroneously conceded that the 911 call log was admissible as a prior consistent statement. We agree.

Although hearsay is generally inadmissible, prior consistent statements made by a witness are not hearsay where the statements are "offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive." ER 802; ER 801(d)(1)(ii).

Grammatically, this rule is disjunctive—a charge of recent fabrication *or* improper influence *or* improper motive will open the door to prior consistent statements. Nevertheless, our courts have generally held that a charge of recent fabrication will open the door to a prior consistent statement only where that alleged fabrication arose from a cognizable motive. *See, e.g.*, *State v. Bargas*, 52 Wn. App. 700, 702-03, 763 P.2d 470 (1988) (prior consistent statement admissible only where witness "had a reason to fabricate" her story); *see also State v. Stark*, 48 Wn. App. 245, 249, 738 P.2d 684 (1987) (prior consistent statement admissible only where the statement precedes an "event" that

creates an inference of fabrication). In other words, courts should not admit prior

consistent statements where cross-examination merely suggests that the witness has a

faulty memory. Instead, courts should admit such statements only where cross-

examination implies that the witness has altered their version of events for an identifiable

reason.[2]

Here, the parties dispute whether Benson's cross-examination of Zurn impliedly

accused Zurn of insidious fabrication, such as to warrant admitting Zurn's prior

consistent statements. In the State's view, Benson impliedly accused Zurn of fabrication

merely by presenting Zurn with the interview he gave to law enforcement, which

arguably conflicted with his testimony. However, presenting Zurn with this interview

implied only that Zurn's story had changed, and not that it had changed for deceitful

reasons. Indeed, the trial record confirms that Benson was merely accusing Zurn of

having faulty memory, without accusing him of mendacity. *See* RP at 49 (defense

counsel asks whether Zurn's memory was "better . . . the day of the incident, or . . . better

_____

[2] Although not relevant to this appeal, prior consistent statements also are only admissible where the declarant made the statement (1) before the motive to falsify arose, and (2) at a time when the declarant would not have foreseen the statement's legal consequence. *State v. Stubsjoen*, 48 Wn. App. 139, 146, 738 P.2d 306 (1987) (prior consistent statement must precede motive to falsify); *State v. Makela*, 66 Wn. App. 164, 168-69, 831 P.2d 1109 (1992) (prior consistent statement must occur when legal consequences unforeseeable).

now"). Benson neither identified nor alluded to any intervening event or circumstance that might have motivated Zurn to lie.

Because Benson neither expressly nor impliedly charged Zurn with fabrication arising from a cognizable motive, Zurn's prior consistent statements were not admissible to rebut such a charge. Benson correctly argues that his counsel should have maintained his objection to admission of the 911 call log.

### ii. Prejudice: call log

Although Benson's counsel should have pursued his objection to the call log, that deficiency will not support an ineffective assistance claim absent a showing that the deficiency prejudiced Benson. *Yarbrough*, 151 Wn. App. at 89. Prejudice arises where, but for the claimed deficiency, there is a "reasonable probability" the outcome of the trial would have differed. *In re Pers. Restraint of Pirtle*, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

Here, no prejudice arose because, firstly, Benson's successful objection to the call log as a prior consistent statement likely would have prompted the State to offer the log under a more appropriate evidentiary rule. Specifically, the State might have offered the log as an excited utterance, present sense impression, or business record—any one of which hearsay exceptions would have justified admitting the log.

Secondly, no prejudice arose because the trial court did not rely on the call log when reaching its verdict.

We examine in turn each alternative evidentiary rule under which the call log might have been admitted, and then examine the trial court's oral ruling indicating that the call log did not meaningfully impact the verdict.

### (a) Excited utterance

Although hearsay, a statement is admissible where it "relat[es] to a startling event or condition" and where the declarant makes the statement while "under the stress of excitement caused by the event or condition." ER 803(a)(2) (defining "excited utterance"). Where a party offers a statement as an excited utterance, it is immaterial whether the declarant is available to testify. ER 803(a).

Here, Zurn's statements to the 911 operator would have qualified as an excited utterance because Benson brandishing a gun at him and threatening to kill him certainly constitutes a "startling event." ER 803(a)(2). Indeed, Zurn testified that the confrontation with Benson was tense enough to frighten him. Moreover, the stress of that startling event would not have subsided by the time Zurn called 911, as Zurn placed his call while the confrontation with Benson was ongoing.

As our court confirmed in *State v. Briscoeray*, a 911 call made under such circumstances—namely, made within minutes of an altercation involving firearms—may

8

produce statements that would be admissible as excited utterances. 95 Wn. App. 167, 174-75, 974 P.2d 912 (1999). We conclude that the ER 803(a)(2) exception would have applied.

### *(b) Present sense impression*

Although hearsay, a statement is admissible where it "describ[es] or explain[s] an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." ER 803(a)(1) (defining "present sense impression"). Where a party offers a statement as a present sense impression, it is immaterial whether the declarant is available to testify. ER 803(a).

Here, Zurn's statements to the 911 dispatcher would have been admissible as present sense impressions because Zurn (1) described the confrontation with Benson, and (2) offered his description contemporaneously to perceiving Benson's actions and threats, or else immediately thereafter. Indeed, as stated above, Zurn called 911 while the confrontation with Benson was ongoing.

### *(c) Business records*

Where an entity in the regular course of business produces a record of an act or event, and where the entity produces such a record at or near the time of the act or event, that record is admissible if properly authenticated. RCW 5.45.020; *see also* RCW 5.45.010 (defining "business" broadly). Although live testimony from a record's

custodian may authenticate the record, authentication may also derive from certification

by the record's custodian. *State v. Thompson*, 35 Wn. App. 766, 770, 669 P.2d 1270

(1983); RCW 5.44.040.

Here, Benson does not dispute that the call log was a record produced in the

ordinary course of emergency dispatch's business, nor does he challenge the legitimacy

of the certification imprinted on the log. The log plainly is a record of Zurn's

confrontation with Benson, created contemporaneously with that confrontation. We

conclude the log would have been admissible under the business records exception.

### (d) Oral verdict

Even if no evidentiary rule would have sanctioned admission of the call log,

Benson's lawyer's failure to object to the log still would have been harmless because the

trial court did not rely on the log to reach its verdict. Instead, the court relied on

photographs of Benson handling his weapon to support the conclusion that Benson had

likely pointed his weapon at Zurn, as Zurn had testified. The trial court also concluded

that Zurn likely would not have called 911 had Benson only produced his gun, and not

pointed it at anyone—a conclusion that relies on the *fact* of Zurn's 911 call but does not

rely on the contents of that call, as summarized in the log. Moreover, Zurn's demeanor

when testifying further convinced the trial court that his version of events was truthful.

Having found Zurn credible, the trial court further concluded beyond a reasonable doubt that Benson—as Zurn had testified—had threatened to shoot Zurn. While the court did not identify the specific evidence it relied on in reaching that conclusion, the court reached its conclusion only after explaining why it found Zurn credible. For this reason, we infer that the court's conclusion flowed from Zurn's credibility, rather than from the call log. The court's oral ruling never referenced the call log.

### *iii. Deficient representation: Officer Rogers' testimony*

Benson argues the trial court erred in admitting Officer Rogers' testimony related to Zurn's 911 call because Zurn's statements to dispatch—or else dispatch's statements to Officer Rogers—were inadmissible hearsay.

However, under our analysis supra we have already determined that Zurn's statements to dispatch were admissible, under any of several rules, for the truth of the matter asserted. Accordingly, we need not determine whether the trial court properly admitted Officer Rogers' testimony, nor need we determine whether Benson's attorney should have objected on relevancy grounds. To the extent any error occurred, the admissibility of Zurn's statements via the 911 call log rendered that error harmless.

SCRIVENER'S ERRORS

*Acquittals*

Benson correctly argues that the trial court acquitted him of one assault count and one harassment count.[3]  The judgment and sentence did not memorialize these acquittals. However, the order's silence as to those counts results in implied acquittals.  *See State v. Ervin*, 158 Wn.2d 746, 753, 147 P.3d 567 (2006).  The trial court may, but is not required, to amend the judgment and sentence to note Mr. Benson's acquittals.

*Harassment conviction*

Benson argues and the State concedes that the judgment and sentence should indicate conviction for misdemeanor harassment rather than felony harassment.  We agree and remand to the trial court to make that correction.

COSTS

Benson argues that the trial court should not have imposed the VPA and DNA collection fee because the legislature has eliminated the former fee for indigent defendants and the latter fee for all defendants.  We agree.

Under RCW 7.68.035(4), trial courts must not impose the otherwise mandatory VPA on indigent defendants.  Moreover, the legislature has eliminated DNA collection

---

[3] The trial court also merged the two unlawful display of a weapon counts, resulting in three convictions on six original counts.

fees for all defendants. *See* LAWS OF 2023, ch. 449, § 4. These changes apply to defendants whose direct appeals are not final. *State v. Ellis*, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). Because Benson's appeal is not yet final, we remand to the trial court to strike the challenged costs.

Affirm convictions, but remand to correct scrivener's error in judgment and sentence and strike VPA and DNA collection fee.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, C.J.

WE CONCUR:

Pennell, J.

Staab, J.

13